PeahsoN, J.
 

 The plaintiff alleges, that he is the owner of a tract of land, bounded on the west by the main run, (which is the run farthest to the west,) of Elk Marsh Swamp; that, by means of a dam, some two or three feet high, commencing at the high-land, and running through the swamp to the main, and then down, not passing the main run, but cutting across a bend or elbow, some two hundred and fifty yards, along which latter part of the dam there is a ditch or canal on the west side, about ten
 
 feet
 
 wide, and four feet deep, he can give vent to the wator, in aid of the main run: The water has been enclosed, and a largo body of valuable low ground rendered fit for cultivation ; and that he and those under whom he claims, have enjoyed this easement of throwing the water over to the west of the dam, by which, having a vent on that side, the land on the east side, enclosed by the dam, has been pro
 
 *10
 
 tected, for the last twenty years, during all of which time they have had the land in cultivation, and made, annually, large crops of corn. He further alleges, that the defendant, who is the owner of the land on thewest side of the Main run, is about to make a dam from the high-land on his side, through the swamp to the main run, and then cut a ditch, and make a dam parallel with the plaintiff’s ditch, and about six feet from it, across the bend or elbow of the main run ; which part of the main run will thereby be shut up, and ail the water oí the swamp will have to pass through the two ditches, and all be confined within the space between the two. dams — about twenty-six feet — which he alleges, will not be large enough for it to vent itself, and, consequently, his (the plaintiff’s) dam will be washed away, as it will be particularly exposed, because of the manner in which the defendant designs to locate his dam, running through the swamp — for the current of the stream will thus be thrown so as to strike his (the plaintiff’s) dam in an obtuse angle.” He alleges, further, that although the land in the bend, or elbow, of the main run, some three acres, belongs to him, yet the defendant, contrary to his remonstrances, persists in his intention to cut his ditch through it, and has actually commenced operations, and has his hands at work cutting the ditch on the land of the plaintiff. The prayer is fora perpetual injunction.
 

 The defendant admits, that it is his intention to construct the dam and cut the ditch, as the plaintiff alleges. He also admits, that the plaintiff and those under whom he claims, have- been in the enjoyment of the easement of throwing the water over on the west .side of the dam, for the last twenty years ; but, he alleges, that the space between the two dams will, as he believes, be sufficient t.o give vent to the water, except in freshets higher than is common. As
 
 to
 
 the allegation of the plaintiff, that the location which he
 
 *11
 
 intends to give his dam, will cause the current of the stream to strike the plaintiff’s dam, in an obtuse angle, whereby it would be most exposed to injury, he says nothing. He also alleges, .that he has been iniormed, that the
 
 eastern run,
 
 which passes through the plaintiff’s field, was the
 
 main run,
 
 and, therefore, the title of the plaintiff ought to stop there. But he admits, that, by long possession, the plaintiff’s title has been extended to this dam and ditch. And, if the eastern run is not “the main run,” then, he alleges, that the “ main run” is where the plaintiff’s ditch was situated, for that it was not, in fact, a ditch, but a mere embankment along the side of the main run: and what is called by the plaintiff the main, or western run, and is now apparently so, was a mere “wash out,’’ or channel, made by the force of the current, and was not the main run called for by the plaintiff’s deeds.
 

 This is not the case of an ordinary or common injunction, in aid of, and secondary to, another equity ; but it is
 
 ths point in the cause,
 
 — it is to prevent irreparable injury, (as is alleged,) and to dissolve the injunction decides the case: for, to dissolve it, allows the act to be done. By way of illustration, take the case of an injunction to stay waste in cutting down ornamental or shade trees: if the injunction be dissolved on bill and answer, and the trees are cut down, the damage is done ; for the trees cannot be made to grow again.
 

 To dissolve this injunction, before hearing the cause on proof, the defendant must show, that the plaintiff has no case fit to be heard; and if, from the answer, it appear, that there is any question of doubt, on a matter that should, be further inquired into, the injunction will be continued until the>hearing.
 

 We presume the defendant did not advert to the distinction between the different kinds of injunctions, or he would
 
 *12
 
 not have appealed, and would not have moved for a dissolution of the injunction until he had established his title
 
 at law.
 
 In this case both of the two points, upon which it turns, are left doubtful. The plaintiff alleges, that if the dam and ditch of the defendant be made, as he intends to make them, there will not be space enough between the two dams to give vent to the water of the swamp, and his land will be flooded. The defendant is of opinion, that this is not true, except in cases of extraordinary freshets, such as the plaintiff has been liable to sustain damage from heretofore ; and thereupon he insists, that he is in no wise encroaching on the plaintiff’s easement, supposing him to be entitled to it.
 

 How are we to decide this question without proof?
 

 . Again the plaintiff alleges, that the defendant is cutting his ditch through land which belongs to him (the plaintiff.) The defendant denies this altogether, in an argumentative manner, insisting, that supposing by force of the
 
 long
 
 possession and the statute of limitations, the plaintiff'has acquired title up to his ditch, 3 et he has no right to claim any further, for he (the defendant,) has been informed and believes, that the ditch is cut on the bank of the western run of the swamp, and that what the plaintiff says is the .main run, by which he sets up title to the two or three acres in the bend or elbow, is only a “ wash out,’’ artificial channel made by freshets. Here, then, we have a disputed question of boundary. How can we decide it without proof.
 

 We concur with the Court below, the injunction ought to be continued until the hearing. In the mean time the question of boundary may be settled in the action of ejectment ; and at all events, if the case ever comes before us again, wo hope there will be an accurate survey and a chart showing the.location of the swamp, and of the plain
 
 *13
 
 tiff’s dam, and the site of the contemplated dam and ditch of the defendant, and that we will be furnished with some data, by which to be enabled to form an opinion, whether the easement of the plaintiff (if he has one,) will be en. croached on. Upon these points, as the case is now before us, this Court can make no order, but it can be done in the Court below, and thereby the question, does the plaintiff possess an easement ? and if so to what extent ? can be definitely determined.
 

 Per Curiam. Decretal order affirmed.