In April, 1830, Kenneth West died intestate, seized and possessed of a large real and personal estate, leaving him surviving the defendant, Elizabeth West, his widow, and three infant children. In November, 1830, the defendant, Rhodes, was appointed administrator, and entered into bond, with the defendant, Mhoon, and one Webb as his sureties, took possession of the personal estate, and paid off the debts, or most of them. In 1832, Rhodes left this State, and in 1834 failed in business; and has ever since been insolvent, without having made a settlement of his accounts as administrator. The plaintiff and Rhodes were brothers-in-law, and his wife was a sister of Mrs. West; and the plaintiff at sundry times made considerable advances for the education of the infant children, for whom Mrs. West was appointed guardian, in 1837. In 1843, the plaintiff and James Allen, who had married one of the infant children, and who acted for himself and the other two children and his mother-in-law, came to a settlement by which, after deducting the advancements made by the plaintiff, there was a balance found against him of upwards of $4,000, part of which he paid, and secured the residue, by giving his note. Allen died in 1847. Judgment was taken on the note, and the plaintiff thereupon filed this bill.
The plaintiff alleges that, in 1842, he called on Mr. Allen, as the agent of Mrs. West and the children, for payment of the advancements made by him; "and the said Allen then and there stated to your orator that he, your orator, was one of the sureties on the bond given by Rhodes as administrator of Kenneth West — that James G. Mhoon was the other surety — that Rhodes was unable to pay the amount due by him as administrator, which was over $4,000 — and that, as Mhoon was a nonresident, the said Elizabeth West and the other distributees looked to your orator alone to pay them the respective amounts due from Rhodes, as administrator." "Your orator states, that he was also informed by the said Elizabeth West, at the time of the settlement hereinafter referred to, that he, your orator, was a surety on said bond." The plaintiff then alleges, that under the belief that he was one of the sureties of (32) Rhodes, which belief was produced by the statement of Mr. Allen and Mrs. West, he made the settlement in 1843, charging himself as surety for all that Rhodes, his supposed principal, seemed to be in arrear, and crediting himself by his advances for the children; and there was thus a balance against him of upwards of $4,000 — part of which he paid in cash, taking receipts to himself as surety, and for the balance, gave his note to Mrs. West as guardian. And he further alleges, that *Page 40 
in 1851, he discovered, for the first time that he was not one of the sureties of Rhodes. The prayer is to be relieved against the effect of this mistake, and for an injunction against the collection of the note.
The defendant, Elizabeth West, answers that when Rhodes was about to leave the State, she applied to him to know in what way he would dispose of the estate of her husband, and what provision was made for the management of the property, and the support of herself and children: — and was told by him, that he should leave every thing in the hands of the plaintiff and his son, G. W. Capehart, and they would attend to the business of the estate in his stead, and as well as he could do himself. That accordingly Rhodes went off, without returning any account current or settlement, leaving the estate of her husband in the hands of the plaintiff and his son; and they, as she always thought and believed, managed the same in his stead: And she is satisfied that the plaintiff did have the management and control of every thing, and took charge of the education of the children; for she lived on her dower land, and had the use of only a few slaves, without having the property divided, and without knowing how the profits were disposed of — having the most entire confidence in the plaintiff, who, as she believed, was acting in the place of Rhodes, and was hiring out the negroes, (about thirty in number,) and receiving the proceeds thereof. As to the settlement, she says she entrusted the whole matter to Mr. Allen; and he informed her, that he had made a full settlement with plaintiff, and handed her the note, payable to her as guardian — and this is all she knows of the settlement. She never had it in her possession, and never saw it. She knew nothing, and thought nothing about the sureties of Rhodes; she had never spoken of the matter to any one, to the best of her recollection, (33) prior to the settlement; and did not know who were the sureties until May, 1851, when she was first informed by plaintiff that Mhoon and Webb were the sureties. "This defendant does not believe that the plaintiff, in making the settlement, did so on the supposition that he was bound as surety;" and she positively denies that she informed him, at the time of the settlement, that he was the surety of Rhodes. For she never stated anything of the kind to the plaintiff, or to any other person, then or at any other time; for she had never been so told by Mr. Allen, or any other person, to the best of her remembrance, and, indeed, knew nothing of the matter, until informed of it by the plaintiff, in 1851. But she had been informed, that the plaintiff had received of Rhodes *Page 41 
notes of the estate to a large amount, and supposed the settlement included the notes, hires of the negroes and other funds of the estate, which had come to his hands, and the advancements made by him for the children. She does not know in what form the receipts were drawn.
It is not necessary, in this stage of the case, to state the other answers. Only so much of the bill and answer of Mrs. West is stated, as is necessary to present the question made on the motion to dissolve the injunction.
The right of the plaintiff to an injunction is put on the ground that he was told by Mrs. West, and by Mr. Allen, who was acting for himself and wife, and as the agent of Mrs. West and the other two children, of whom she was guardian, that he was one of the sureties of Rhodes, the administrator; and that he made the settlement, and gave the note in question, under the supposition that he was one of the sureties — into which mistake he was led by the untrue statements of Mrs. West and Mr. Allen. Mrs. West denies positively the allegation that she ever made such a statement to the plaintiff. She says she never had any idea or notion, that the plaintiff was one of Rhodes' sureties; that Mr. Allen never told her any such thing; and she does not believe that the plaintiff made the settlement under any such supposition. On the contrary, she believes (34) he made it because he had undertaken to act in Rhodes' place, and had received, and was accountable for, the assets of the estate. The answer of Mrs. West is full, so far as she has any knowledge, information, or belief. But Mr. Allen is dead, and Mrs. West can say nothing about the allegation, that he told the plaintiff that he was one of the sureties; because she knows nothing, not being present at the settlement, except that Mr. Allen never told her any such thing, and from circumstances, she does not believe the plaintiff acted under any such mistake.
The question is this: The defendant makes a full answer in regard to all matters, of which she has any knowledge or information; but there is one fact, not alleged to be within her knowledge, and evidently not so, in regard to which she can say nothing, because she knows nothing, and has no information except that derived from the plaintiff; — has the plaintiff a right to have the injunction continued to the hearing, because *Page 42 
that one allegation is not answered? — every other allegation, upon which his equity rests, being positively denied, save the one in regard to which the defendant has no knowledge or information.
The injunction is, to stay execution upon a judgment for a debt recovered at law. This class of injunctions differs very essentially from injunctions to prevent irreparable injury, as to stay waste, in regard to which very different considerations are involved. The distinction is a plain one; and yet, as we had occasion to say in Purnell v. Daniel43 N.C. 9, it does not seem to be sufficiently attended to on the circuits. In the one, the defendant in equity has established his right by the judgment at law; and the only question is, should the plaintiff in equity be allowed to keep him out of his money until an alleged equity is settled? In the other, the question of right is open, and there is the further consideration that to remove the injunction, would be to allow the thing about which the parties are in dispute, to be done before the dispute is heard, when the defendant cannot be put in statu quo: for "if a tree is cut down, it cannot be made to grow again." Hence, the principles regulating the dissolution of injunctions of the latter class are governed by considerations wholly different from those applicable to the former.
In regard to injunctions of the class which includes (35) the case now presented, our Courts have departed somewhat from the English practice, by holding that when the answer is unfair and evasive, and does not respond to the allegations of the bill, the injunction will be continued to the hearing, although the equity of the plaintiff is not confessed. In the very great number of cases upon the subject, some confusion has arisen, and the line of demarkation is not as well defined as could be wished. Our present object is to fix this line, in order to see on which side our case falls. For this purpose, it will be necessary to advert to the English practice, and to ascertain, if possible, the grounds on which our Courts felt obliged to make a departure; and in this way fix on a principle which will limit the extent of the departure.
"Injunctions, (unless issued upon special application in urgent cases, as of waste,) after bill filed and affidavit, can only be obtained upon thedefendant's answer; or upon an order for time to answer, or an attachment for want of an answer." 2 Madd., ch. 220.
"The Court will not, before answer, restrain proceedings on a judgment, unless it be for want of an answer." Ibid 221.
Thus, according to the English practice, an injunction of *Page 43 
the kind we have under consideration, could not be obtained, except upon the discovery made by the answer, and the confession of the plaintiff's equity — unless the defendant was in default, by failing to put in answer.
"It must be remembered that it is a general rule, that upon an original bill, the plaintiff cannot have the common injunction, until some default by the defendant." "The affidavit of merits must in general be made by the plaintiff himself." "Where the bill has been filed, and the subpoena to appear regularly served, the plaintiff may claim the common injunction, on the defendant's making default in not appearing; or, having appeared, in not answering within the times prescribed," (four days in a term cause, and eight days in a country cause). Drewry on Injunctions, 230, 231.
The proper course to dissolve the common injunctions is, upon the answer coming in and an order nisi, that is, an order that unless, on a future day, the plaintiff shows good cause to the contrary, the injunction shall be dissolved." "On the day for showing cause, the defendant moves to make the ordernisi absolute, and the plaintiff then elects whether (36) he will show for cause objections to the answer, or the merits as they appear in it." If electing the former course, he excepts to the answer for insufficiency, and cannot maintain the exceptions, the injunction is gone — it is ipso facto dissolved, on the Master's reporting the answer sufficient." Ibid, 267.
If he elects to show for cause merits confessed in the answer, the question depends upon the answer alone; and "except in a few excepted cases, though five hundred affidavits were filed, not only by the plaintiff, but by many witnesses, not one could be received to contradict the answer. Clasham v. White, 8 Ves. 35; Ibid, 275.
"Though no affidavits can be read to contradict the answer, they may, to substantiate written instruments alleged by the bill, and neither admitted nor denied by the answer;" (e. g., the receipt alleged in the bill to have been given to the plaintiff as surety of Rhodes, about which the defendant says she knows nothing, and which the plaintiff does not produce).
"It seems to have been formerly the practice to allow affidavits to be read, in support of allegations made by the bill as to acts of the parties,neither admitted nor denied by the answer; but it is settled to the contrary. If deeds or letters be stated in the bill, and the defendant says he does not know whether the statement is correct or not, they may be verified by affidavit. But as to facts and circumstances which thedefendants do not know of, if the benefit of them cannot be had *Page 44 
from the defendants' consciences; it cannot be had at all, except so far as the plaintiff in equity may be able to prove them at the trial." Ibid, 276; for which is cited Barrett v. Tickell, (Jac. 154,) 4 Cond. Ch., 70; which case we have examined, and find it fully supports the position for which it is cited.
"In a very late case, where, upon showing merits confessed in the answer, as cause against dissolving an injunction, the counsel for the plaintiff tendered an affidavit to substantiate certain allegations in the bill, as to which the defendant stated in his answer that he was ignorant, the Vice Chancellor refused it, saying `the point was quite settled.'" Id. 276, (margin, 426.)
According, then, to the English practice, from which we derive our notions of equity practice, it is settled that if the answer is full, that is, not excepted to for insufficiency, the plaintiff can only support his injunction to the hearing, by a discovery obtained from the defendant, or, as is said in the English books, "upon equity confessed in the answer;" for, if the plaintiff fails to prove his allegations by the admissions of the answer, he is without proof, and "his injunction is gone." The idea that he can prove his allegations by his own affidavit, is out of the question. He is not allowed to prove them in this stage of the case, by the affidavit of disinterested persons; and it is a maxim, that the affidavit of the party interested is never received, except to initiate proceedings. It is upon this maxim that the rule is founded, which was contended for by Mr. Moore, that if the defendant admits the equity set up by the plaintiff, and seeks to avoid it, by alleging new matter, the allegations will not avail him, because he has no proof of it, and his own affidavit cannot betaken as proof. He is then like a plaintiff, who has failed to obtain a discovery from the defendant, i. e., without proof, and has no equity, except so far as he may be able to prove his allegations at the trial.
It remains to be considered how far, and on what ground, we have departed from the English practice.
In England, the Court of Equity is always open: here, it is only open twice a year, and then but for one week. It was therefore necessary to make some change, particularly in regard to injunctions to stay executions upon judgments at law; for if they were never to issue, except upon equity confessed in the answer, or in default of an answer, they would in most cases come too late. Hence, it was provided by Laws 1800, Rev. Stat., ch. 32, sec. 11-12, that a Judge, at Chambers, might issue an injunction to stay an execution upon a judgment at law, provided that bond was given to pay the amount, upon *Page 45 
the dissolution of the injunction, and the application was made within four months after the judgment was obtained — thus, in this particular, placing injunctions of the kind we are considering, upon a footing with injunctions of the other kind, or to stay waste. It was then seen by the Courts, that in every case a plaintiff could have his injunction continued over, for at least six months, simply by filing exceptions to the answer, which could not be reported upon at the first (38) term of the Court, owing to its limited duration. This bore hardly upon plaintiffs at law, who were kept out of their money. It was thereupon decided, that the motion for a dissolution, and the exceptions, might be brought on at the same time, and the injunction would be dissolved, unless the exceptions were sustained, or the equity of the bill was confessed. The matter is fully discussed and explained by Chief Justice RUFFIN, in Smith v. Thomas, 22 N.C. 126, and again in Edney v.Motz, 40 N.C. 234. The pre-eminence of Chief Justice RUFFIN, in regard to equity practice is admitted by all, and we have nothing to say except "What he has already said." Thereupon it grew into a practice not to dissolve an injunction, when exceptions were filed, or might have been filed, for insufficiency of the answer; either because it did not respond to the allegations within the knowledge of the defendant, or gave an unfair, equivocal or evasive answer, which would be good cause for exceptions. So the principle established is this: Inasmuch as our Courts of Equity are not always open, and are open only twice in the year, and then but for one week, the plaintiff, (upon a motion to dissolve an injunction,) may rely not only upon the equity "confessed in the answer," but may have the benefit of any exception to the sufficiency of the answer; so that, if it does not respond to an allegation, the want of which response would be good ground of exception, or if it is evasive or manifestly unfair, which would also be good ground of exception, the injunction will be continued to the hearing. In other words, the defendant cannot have the injunction dissolved, without putting in a full answer, that is, an answer which would be sustained upon exceptions.
The principle then is fixed, and the extent of the departure is limited by the necessity growing out of a different state of things in our judiciary system — and it is this: We have not time to consider exceptions to an answer; therefore, upon a motion to dissolve an injunction, we will look into any matter of exception, and not confine ourselves to the equity confessed by the answer. *Page 46 
In the case under consideration, there is no equity confessedby the answer, and there is no ground of exception to the answer. It is full as to all matters within the knowledge and information of the defendant, and if it had been (39) excepted to, the Master would have reported against the exceptions; and as the plaintiff was not able to maintain his exceptions, "the injunction is gone" — it is ipso facto
dissolved, on the Master's reporting the answer sufficient. Drewry on Injunctions, cited supra.
The interlocutory order dissolving the injunction is affirmed.
PER CURIAM. Decree below affirmed.
Cited: Lloyd v. Heath, post, 41; Wright v. Grist, post, 206; Thompson v.Williams, 54 N.C. 178; Ashe v. Johnson, 55 N.C. 154; Brothers v.Harrill, Ib., 210; Peterson v. Matthis, 56 N.C. 32; Futrill v. Futrill,58 N.C. 64; Mims v. McLean, 59 N.C. 203; Jones v. McKenzie, Ib., 206;Parker v. Grammer, 62 N.C. 30; Key v. Dobson, Ib., 171; Williams v.Moore, Ib., 212; Heilig v. Stokes, 63 N.C. 615; Walker v. Gurley,83 N.C. 433; Mfg Co. v. McElwee, 94 N.C. 429; Cobb v. Clegg,137 N.C. 159.