COBB v. CLEGG.

(Filed December 6, 1904).

1. INJUNCTIONS—*Restraining Order—The Code, sec. 338.*

> In an action to restrain the violation of an alleged covenant as to
> the use of a room in a hotel, there being a material conflict in
> the pleadings, the injunction will be continued to the hearing
> on the merits.

2. PLEADINGS—*Complaint—Answer.*

> An answer must contain a general or specific denial of each
> material allegation of the complaint, or of any knowledge or
> information thereof sufficient to form a belief.

ACTION by Marion Cobb and another against W. F. Clegg,
heard by *Judge H. R. Bryan,* at chambers, at Greensboro,
N. C., on September 19, 1904.

The plaintiffs brought this action to obtain an injunction
restraining the defendant from using a room in the Hotel
Guilford, which is situated in the city of Greensboro, as a
cafe, restaurant or eating place contrary to the covenant con-
tained in the lease of the said room to the defendant's as-
signor. They allege that on or about the 11th day of April,
1904, they leased the room verbally to one Sam Chouris for
one year to be used by him as a fruit, candy and ice-cream
kitchen and for no other purpose, and that it was specially
agreed at the time that the plaintiffs did not lease it for the
purpose of being used as a cafe or restaurant because of the
offensive odors caused by such use which were disagreeable
to the guests of the hotel, it having once been used for that
purpose and found to be objectionable, and the plaintiffs
afterwards and before the lease to Sam Chouris having re-
fused to lease it for use as a restaurant or cafe, though a
much larger rent was offered than that proposed to be paid by

Chouris. It is further alleged that Chouris agreed to accept the lease upon the terms and conditions just stated, and expressly covenanted that he would not use the room as a restaurant or cafe, but as a fruit, ice-cream and candy kitchen, which should be so conducted as not to emit therefrom any offensive odors and thereby render it objectionable to the hotel guests. That subsequently, on the 16th day of April, 1904, Chouris requested the plaintiffs to give him a written memorandum of the lease, stating merely its duration and the amount of rent to be paid, and giving as his reason for wanting this memorandum that there had been frequent changes in the management of the hotel and that he would need it for his protection; that plaintiffs for his accommodation complied with the request, the plaintiff dictating a letter for Chouris, which was afterwards written and signed by the plaintiffs and accepted by Chouris in writing over his signature. The letter described the premises leased with some particularity, and also certain changes to be made by Chouris at his own expense in the arrangement of the room and the adjoining hall, but did not contain any reference to the alleged stipulation that it should not be used as a restaurant or cafe. It is then charged that the defendant, who is a business rival of the plaintiffs, well knowing, or having the means of knowledge, that said agreement had been made and refusing to investigate the matter, in July, 1904, bought the lease from Sam Chouris, who had leased the room only for a candy kitchen, or from his brother John Chouris to whom a pretended sale had been made, and announced his purpose to establish a restaurant and cafe at the place, whereupon the plaintiffs immediately notified him of said covenant of Sam Chouris not to use it for such a purpose, and insisted that the assignment to him was void and that any use of the room as an eating place was clearly prohibited by the original lease, and he was forbidden to devote it to any such purpose; but

that defendant, notwithstanding the notice and protest from plaintiffs, began at once to make the necessary changes in the room to adapt it to said use as a restaurant, furnished and equipped it for that purpose and has since conducted a restaurant in it to the great annoyance and irreparable damage of the plaintiffs. It is alleged in the second, third and fourth sections of the complaint that the agreement not to use the room as a restaurant, while contemporaneous with the making of the lease was wholly independent of and collateral thereto, and that, even if, in any sense, an integral part of the contract, it was not intended to be inserted in the written memorandum or to be reduced to writing at all, but to remain in parol and in that way to be a binding covenant or stipulation between the parties to the lease. Each of those sections of the complaint is denied by the defendant as follows: "The defendant has not sufficient information to form a belief as to the allegation contained in (said) paragraph of the complaint and therefore denies the same to be true." There were other allegations made in the complaint and denied in the answer, but it is not necessary, in the view of the case taken by the Court, to set them forth. The defendant averred in his answer that he bought the lease from John Chouris, assignee of Sam Chouris, for full value and without any notice of the alleged covenant, and that he has conducted a restaurant at the place in an orderly and cleanly manner and without any annoyance to the plaintiffs' guests. Affidavits were filed by the respective parties in support of their allegations, but we need do no more than state that a careful examination tends to show that, as the case now stands, the proof preponderates decidedly in favor of plaintiffs' contention that there was a covenant between Chouris and themselves to the effect stated above. Upon the complaint filed *Judge Shaw* granted an order to the defendant to show cause why an injunction should not issue as prayed for,

and in the meantime restrained the defendant from conducting a restaurant in the room contrary to the alleged covenant, and at the hearing of the motion for an injunction before *Judge Bryan,* upon the return of the order to show cause his Honor continued the injunction to the hearing, whereupon the defendant, having duly excepted, appealed to this Court.

*Fuller & Fuller* and *King & Kimball,* for the plaintiffs.
*W. P. Bynum, Jr., Scales, Taylor & Scales* and *G. S. Ferguson, Jr.,* for the defendant.

WALKER, J., after stating the case. The plaintiffs contend that the contract or lease was not one required to be in writing and that, as the entire agreement was not reduced to writing and not intended to be, but a distinct and independent part of it remained in parol, the plaintiffs are not forbidden to show the existence of the unwritten stipulation by oral evidence. They admit that when parties reduce their agreement to writing it is a rule of evidence that parol testimony is not admissible to contradict, add to or vary it; for although there may be no law requiring the particular agreement to be in writing, yet the written memorial is regarded as the surest evidence. But they insist that this case is not within either the letter or the spirit of the rule, as the writing is not a memorial of the whole agreement, which was severable into parts, one of the parts only having been committed to writing and the other stipulations and terms of the agreement having been left open to parol proof, and that in such a case the rule is that the stipulations may be proved orally, unless the contract is one required to be in writing. They have cited numerous authorities to sustain their contention and among them the following: *Twidy v. Saunderson,* 31 N. C., 5; *Manning v. Jones,* 44 N. C., 360; *Johnson v. McRary,* 50

N. C., 369; *Kerchner v. McRae,* 80 N. C., 219.   Counsel
also insisted that the rule they rely on applies even when the
contract is an entire one, for which position they cited *Bras-
well v. Pope,* 82 N. C., 57; *Ray v. Blackwell,* 94 N. C., 13,
and *Terry v. Railroad,* 91 N. C., 236, in the last of which
cases the Court cites *Hawkins v. Lea,* 8 Lea (Tenn.), 42, for
the following proposition, which is therein stated: "When
it is not intended that a written contract should state the
whole agreement between the parties thereto, evidence of an
independent verbal agreement is admissible."   In the last edi-
tion of Clark on Contracts, which was recently published, the
principle is thus stated: "Where a contract does not fall
within the statute the parties may at their option put their
agreement in writing or may contract orally, or put some of
the terms in writing and arrange others orally.   In the lat-
ter case, although that which is written cannot be varied by
parol evidence, yet the terms arranged orally may be proved
by parol, in which case they supplement the writing, and the
whole constitute one entire contract."   Clark on Contracts
(2 Ed.), p. 85.

The defendant's counsel, on the contrary, argued that the
above stated rule, upon which plaintiffs rely, does not apply
to the facts of this case and that parol evidence is not compe-
tent, as its effect will be, not to prove an independent part
of the agreement which was not reduced to writing, but to
vary and contradict the contract as written by the parties, and
which the law presumes contains all the provisions by which
they intended to be bound. In support of their view they cited
*Parker v. Morrill,* 98 N. C., 232; *Meekins v. Newberry,* 101
N. C., 17; *Bank v. McElwee,* 104 N. C., 305, and especially
relied on *Moffitt v. Maness,* 102 N. C., 457, in which the
Court, through *Shepherd, J.,* admonishes us that the rule
against the admissibility of parol testimony to vary the terms
of a written instrument has perhaps been relaxed too much

and that the farthest limit has been reached in admitting
such testimony, beyond which it will not be safe to go. The
Court sounds the alarm and warns us against the dangers
ahead. It may be better, we admit, to trust to the writing—
the memorial selected by the parties for preserving the in-
tegrity of their treaty—than to confide in human memory
for the exact reproduction of the facts, for, says *Taylor, J.,*
"Time wears away the distinct image and clear impression
of the fact, and leaves in mind uncertain opinions, imperfect
notions and vague surmises." *Smith v. Williams,* 5 N. C.,
426, 4 Am. Dec., 555; but whether this salutary principle
does apply and should control in this case is a question which
must be left open for future adjudication. We have stated
the contentions of the respective parties for the purpose of
showing the impracticability of deciding upon the ultimate
merits of the controversy in this the preliminary stage of the
case. This Court should, when feasible, always avoid ex-
pressing an opinion which will anticipate the decision of the
case at the final hearing, and when the facts have not been
found by the tribunal appointed by law to pass upon them.
The practice in this respect seems to have been long since
well settled in applications for injunctions. It was based at
first upon the distinction between a common and a special in-
junction. The former was granted in aid of or as secondary
to another equity, as in the case of an injunction to restrain
proceedings at law in order to protect and enforce an equity
which could not be pleaded, and is issued of course upon the
coming in of the bill, without notice. As soon as the defend-
ant answered he could move to dissolve the injunction, and it
was then for the Court, in the exercise of its sound discretion,
to say whether, on the facts disclosed by the answer, or, as it
is technically termed, upon the equity confessed, the injunc-
tion should be dissolved or continued to the hearing. If the
facts constituting the equity were fully and fairly denied,

the injunction was dissolved unless there was some special reason for continuing it. Not so with a special injunction, which is granted for the prevention of irreparable injury, when the preventative aid of the Court of Equity is the ultimate and only relief sought and is the primary equity involved in the suit. In the case of special injunctions the rule is not to dissolve upon the coming in of the answer, even though it may deny the equity, but to continue the injunction to the hearing if there is probable cause for supposing that the plaintiff will be able to maintain his primary equity and there is a reasonable apprehension of irreparable loss unless it remains in force, or if in the opinion of the Court it appears reasonably necessary to protect the plaintiff's right until the controversy between him and the defendant can be determined. It is generally proper, when the parties are at issue concerning the legal or equitable right, to grant an interlocutory injunction to preserve the right *in statu quo* until the determination of the controversy, and especially is this the rule when the principal relief sought is in itself an injunction, because a dissolution of a pending interlocutory injunction, or the refusal of one, upon application therefor in the first instance, will virtually decide the case upon its merits and deprive the plaintiff of all remedy or relief, even though he should be afterwards able to show ever so good a case. The principles we have attempted to state, are, we think, well supported by the authorities upon this subject. 1 High on Injunctions (3 Ed.), sec. 6; *Jarman v. Saunders,* 64 N. C., 367; *Heilig v. Stokes,* 63 N. C., 612; *Blackwell v. McElwee,* 94 N. C., 425; *Purnell v. Daniel,* 43 N. C., 9; Bispham's Eq. (6 Ed.), sec. 405. The cases of *Marshall v. Comrs.,* 89 N. C., 103; *Lowe v. Comrs.,* 70 N. C., 532, and *Capehart v. Mhoon,* 45 N. C., 30, would seem to be directly in point. In the first of these cases the Court says: "The injunctive relief sought in this action is not merely auxiliary

to the principal relief demanded, but it is the relief, and a perpetual injunction is demanded. To dissolve the injunction, therefore, would be practically to deny the relief sought and terminate the action. This the Court will never do where it may be that possibly the plaintiff is entitled to the relief demanded. In such cases it will not determine the matter upon a preliminary hearing upon the pleading and *ex-parte* affidavits; but it will preserve the matter intact until the action can be regularly heard upon its merits. Any other course would defeat the end to be attained by the action." *Mr. Justice Bynum,* for the Court, in the second case cited, says: "The injunctive relief sought in this action is not auxiliary to another and main relief, but is the main relief itself and the object of the action, and therefore the dissolution of the injunction would be equivalent to a dismissal of the action. In such cases where a reasonable doubt exists in the mind of the Court whether the equity of the complaint is sufficiently negatived by the answer the Court will not dissolve the injunction but continue it to the hearing. Much must depend upon the sound discretion of the Court to whom the question of dissolution is referred." While the principle as stated in the last quotation is in itself sufficient to sustain our decision, we think the able and learned Justice had in mind the rule of practice in the case of a common injunction, which was dissolved upon the answer, unless the equity was confessed or the answer was evasive or the equity was not sufficiently denied. *Capehart v. Mhoon, supra.* This will appear clearly from the following language of the Court, speaking by *Nash, J.,* in *Troy v. Norment,* 55 N. C., 318: "In applications for special injunctions (and this is such a one) the bill is read as an affidavit to contradict the answer; and where they are in conflict, and the injury to the plaintiff will be irreparable if the relief be not granted, the injunction will not be dissolved on motion, but will be continued to

the hearing to enable the parties to support by proofs their respective allegations.    Justice demands this course.    When there is nothing before the Court but oath against oath how can the Chancellor's conscience be satisfactorily enlightened?"    It will also appear by what is said by *Pearson, J.,* for the Court in *Purnell v. Daniel,* 43 N. C., 9: "This is not the case of an ordinary or common injunction in aid of and secondary to another equity; but it is the *point in the cause*— it is to prevent irreparable injury (as is alleged), and to dissolve the injunction decides the case; or, to dissolve it allows the act to be done.    By way of illustration, take the case of an injunction to stay waste in cutting down ornamental or shade trees; if the injunction be dissolved on bill and answer, and the trees are cut down, the damage is done; for the trees cannot be made to grow again.    To dissolve this injunction, before hearing the cause on proof, the defendant must show that the plaintiff has no case fit to be heard; and if, from the answer, it appear that there is any question of doubt on a matter that should be further inquired into the injunction will be continued until the hearing."    In *Capehart v. Mhoon, supra, Pearson, J.,* states the difference between common and special injunctions with great clearness.

The injunction sought in this case is special and we must be governed by the established rule applicable to that class of injunctions in deciding the question now presented.    The Code provides expressly for such an injunction.    The Code, sec. 338 (2).    *Judge Bryan* has merely granted a provisional injunction to the hearing, so that the controverted matters may then be settled by a jury and the plaintiff's right to a perpetual injunction be thus determined upon the merits.    As said by *Justice Bynum* in *Lowe v. Comrs., supra:* "The novel and important questions raised by the pleadings and ably discussed before us do not come up for decision now."

137——11

We decide nothing upon the merits, but simply hold that the facts should be found in the ordinary way so that we may consider and decide the case, if it again comes before us, on all of the facts as ascertained and not merely upon facts, now disputed, which may never be found by the jury. Before taking leave of the case it may be well to state that the answer does not contain any denial of the second, third and fourth sections of the complaint, which comprise the main allegations of the plaintiff. The Code requires that the answer shall contain a general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief. Instead of such a denial as is required by The Code the defendant simply disavows any information of the facts alleged. This of course is not a denial even on information, nor is it in any respect a compliance with The Code. *Durden v. Simmons,* 84 N. C., 555; *Fagg v. Loan Assn.,* 113 N. C., 364; *Bank v. Charlotte,* 75 N. C., 45. In other words, unless the defendant denies on knowledge, or on information (which is held to be sufficient to raise an issue, *Kilchin v. Wilson,* 80 N. C., 192), or unless he wishes to be considered as admitting the truth of the allegation, he must disclaim both knowledge and information of the matter alleged. *Durden v. Simmons,* and other cases *supra.*

Without passing upon the controverted facts we are of the opinion that in the present state of the pleadings and proofs there was no error in the ruling of the Court below and the injunction should be continued to the hearing. This is in accordance with the practice in such cases as stated in *Erwin v. Morris,* 137 N. C., at this term.

No Error.