SEABOARD AIR LINE RAILWAY COMPANY v. MARTIN THOMPSON.

(Filed 4 April, 1917.)

**Injunction—Railroads—Public Interests—Right of Way—Home Place—Title.**

Where a railroad company claims title to land for a parallel line or double track as a part of its original right of way, taking part of the land occupied and claimed as a home by an adjoining owner, and in a suit by the company an order is sought to restrain the owner from interference with work of such public character, which is continued to the hearing by the trial court upon findings from the evidence that the question of title was *bona fide* involved; and it appears on appeal that the company had entered upon the lands, built its track, and was operating its trains thereon: *Held*, the restraining order will not be disturbed, though the proper order would have been to restrain both parties and preserve the original status of the property.

HOKE, J., concurring in part; ALLEN, J., concurring in opinion of Hoke, J.; Clark, C. J., filing concurring opinion.

CIVIL ACTION pending in Superior Court of WAKE County and heard at October Term, 1916, by *Bond, J.,* upon motion to continue injunction to final hearing. His Honor made the following findings and order:

"After hearing the allegations of the complaint and considering the affidavits filed, the court finds that there is a *bona fide* controversy as to the rights of the plaintiff to enter upon land claimed by de-

fendant for the purpose of constructing the additional track which it desires to construct. The right is asserted by the plaintiff and denied by the defendant. The court finds as a fact that the land is actually needed in good faith for railroad purposes.

"Upon consideration of all of which it is adjudged, ordered, and decreed that the defendant, his agents and servants, be and they are hereby restrained and enjoined, until the final hearing of this cause, from interfering with any of the operations of the plaintiff company upon any of the land claimed by both parties as far as twenty-nine (29) feet westwardly from the center of the present track of the plaintiff company, seven (7) feet of which twenty-nine (29) feet is to form the base of the slope and six (6) feet of it is to be used for ditch and leveling of track between where the seven (7) feet gives out and the westwardly side of the track is to be laid.

"It is further considered and adjudged that the plaintiff shall leave safe and sufficient support for the underpinning of the house, in so far as any of it may be interfered with by the construction of the track, leveling and sloping as above provided for.

"The court finds as a fact that the westward end of the cross-ties for some distance when laid as the plaintiff proposes to lay them will be inside of the yard inclosure of the defendant Thompson, and, of course, the slope between the end of the cross-ties and the westward limit of said twenty-nine (29) feet.

"It is further ordered and decreed that the plaintiff company shall execute bond in the sum of two thousand dollars ($2,000), conditioned to pay to the defendant any and all sums which may be recovered as damages, if any, of the plaintiff in this action by reason of the granting of the restraining order and injunction and the wrongful appropriation, if any, of the defendant's land to the use which the plaintiff company proposes to make of it.

"Upon giving of said bond the plaintiff company is allowed to proceed with its work, and the defendant, his agents and servants, are restrained and enjoined until the final hearing of this action from in any way interfering with the operations of the plaintiff within the limits above provided for."

From this order the defendant appealed.

Upon the hearing in this Court the following affidavit is offered by plaintiff:

"Vance Sykes, being duly sworn, says that he is a civil engineer in the employ of the Seaboard Air Line Railway Company and has been in charge of the work of constructing an additional track from Johnson Street in the city of Raleigh to the Boylan Avenue Bridge in

said city; that he was in charge of said work at the time the restraining order was entered in this cause; that upon said restraining order being granted, the Seaboard Air Line Railway Company proceeded with the construction of its track upon the property involved in this action, and the construction of said track has since been completed and trains are now being operated over said track; that the track as now constructed is of a permanent character and is permanently located upon the land involved in this action; that the said track has been constructed within the limits fixed by the restraining order granted by Judge Bond; that in the construction of said track it was found to be unnecessary to place any supports under the house occupied by the defendant in this action; that the use of the said track is necessary for the proper performance by the Seaboard Aid Line Company or its duties to the public as a common carrier of passengers and freight, and is being used for such purposes."

It is not denied that, acting under the order of the Superior Court, the track has been completed and that trains are in full operation over it.

*Murray Allen for plaintiff.*
*W. C. Harris, Armistead Jones & Son for defendant.*

BROWN, J.   The plaintiff contends that the land in controversy is a part of its right of way, and that it has become necessary in the discharge of its duties to the public as a common carrier to occupy it for the operation of its train service.

The plaintiff contends that its predecessor, the Raleigh and Gaston Railroad Company, under the act of 1852, ch. 145, is granted "the same means of purchasing or condemning land, etc., as are provided in the act incorporating the North Carolina Railroad Company," including the right to acquire title by failure of the landowner to apply for an assessment within two years after the track is finished.

The plaintiff further contends that section 30 of chapter 82 of the Public Laws of 1848-49, incorporating the North Carolina Railroad Company, became a part of the charter of the Raleigh and Gaston Railroad Company by virtue of the enactment of section 18 of chapter 140 of the Laws of 1852. Section 30 of the act incorporating the North Carolina Railroad provides as follows:

"That all lands not heretofore granted to any person, nor appropriated by law to the use of the State, within 100 feet of the center of said road, which may be constructed by the said company, shall vest in the company as soon as the line of the road is definitely laid

out through it, and any grant of said land thereafter shall be void." It is set forth in the complaint and not denied that at the time of the construction of the connection track by the Raleigh and Gaston Railroad Company, the property in controversy in this connection belonged to the State of North Carolina, and the effect of the above section was to vest in the Raleigh and Gaston Railroad, its predecessor, a right of way of the width of 100 feet on each side of the center of its track.

The answer of defendant denies the principal allegations of the complaint and admits the possession of the defendant. Upon considering the pleadings and affidavits offered, the judge made the findings and order above set out, holding that the construction of the road should not be enjoined until the final hearing, and requiring plaintiff to enter into an indemnifying bond.

It appearing to us that since the order of the Superior Court was made the plaintiff has constructed its track according to the terms of said order and is now operating its trains over it, we are not disposed to reverse the order and dissolve the injunction, but will let the controversy over the land be settled upon a final hearing and not upon an appeal from an interlocutory order. Serious injury to plaintiff and to the public may result from an interference now with the operation of the railway. Whatever damage that can be done to defendant has already been sustained, and to now dissolve the injunction would do defendant no good. His injury cannot be said to be entirely irreparable and he is fully protected by a good and sufficient bond.

Courts are loath to interfere with the construction and operation of railroads and other works of great public importance. Commenting upon the exercise of this jurisdiction, Mr. High, sec. 598, says: "Courts of equity are frequently called upon to interfere by injunction with the construction of railroads in such manner or under such circumstances as would be productive of irreparable injury. In exercising its jurisdiction over cases of this nature a court of equity will in the use of a sound discretion balance the relative inconvenience and injury which is likely to result from granting or withholding the writ, and will be largely governed by such circumstances in determining upon the relief. And where an injunction restraining the use of a railway would not only be productive of great injury to the railway company and to the public, but would result in no corresponding advantage to any one, not even to the persons asking such relief, it will not be granted. So where the work of constructing a railway is of great magnitude, and one involving large expense, if it is apparent that the injury which would result to defendant by granting the injunction in case the result should prove it to have been wrongly granted, would be greater than

that which would result to complainant from a refusal of the injunction, in the event of the legal right being proved to be in his favor, the court will not interpose."

Again, the same writer says: "From the peculiar nature of works of public improvement and the serious injury that may result from any unwarranted interference with their construction, the jurisdiction in restraint of such works is exercised with great caution, keeping constantly in view the damage that may result from improperly restraining their operation." High on Injunctions sec. 615.

The same principle has been stated by our Court as follows: "It is contrary to the policy of the law to use the extraordinary powers of the court to arrest the development of industrial enterprises or the progress of works prosecuted apparently for the public good as well as for private gain." *Lewis v. Lumber Co.,* 99 N. C., 11.

There are other cases in which this salutary principle is recognized. *Navigation Co. v. Emry,* 108 N. C., 130. In this case the Court further declares: "The courts have in many cases not unlike the present one granted relief by injunction pending the action, and when the evidence has left the material matter in dispute in doubt, this Court has generally directed the order granting such injunction to be affirmed. Here the defense alleged by the defendants is more than doubtful, but we are not to be understood as expressing any opinion upon the facts further than as may be proper in directing an affirmance of the order appealed from. *Parker v. Parker,* 82 N. C., 165; *Lumber Co. v. Wallace,* 93 N. C., 22; *Lewis v. Lumber Co., supra; Evans v. R. R.,* 96 N. C., 45; *Whitaker v. Hill, ibid.,* 2."

The track having been already constructed in accordance with the order of the Superior Court, and the trains being in full operation over it, if we were to dissolve the injunction, the defendant could not remove the track and stop the operation of the trains by force, and under the circumstances of this case, we would not consider it advisable to interfere until the facts are all established and the rights of the parties have been adjudicated upon final hearing.

Affirmed.

Hoke, J., concurring in part: Plaintiff having entered within the boundaries of defendant's lot and completed its road before the appeal could be heard and the rights of the parties determined, there seems to be no present good to come from dissolving the injunction, but I am clearly of the opinion that such a process should never have been issued against defendant unless it had also run against the plaintiff and its avowed purpose to enter on and appropriate a part of the dwelling lot

claimed by the defendant and where he and his family made their home. From the facts in evidence as I understand them, defendant and his family, as stated, claimed, occupied, and used as their home a house and lot in the city of Raleigh, adjacent to plaintiff's single track, now connecting Johnson Street, its original terminal, with North Carolina Railroad and its own track, running from Raleigh to Cary. That plaintiff, having decided that it would be to its interest and facilitate the connection and proper operation of its trains at this point to have a double track for the purpose parallel to its former single track, ascertained that in order to construct such track would require a portion of defendant's lot. Under existent conditions there was no likelihood that it could successfully condemn the property under the law, this being a part of defendant's dwelling lot, Pell's Revisal, sec. 2578; and plaintiff thereupon having advanced a claim for right of way of 100 feet on each side of its single track from Johnson Street through the city of Raleigh to the junction with its track leading to Cary, entered the present suit, setting up its claim and asking that defendant be enjoined from committing trespass or otherwise interfering with plaintiff's operations in extending its track and taking over a portion of the yard and lot occupied by defendant. The statute relied on by plaintiff to justify this claim seems rather to refer to the *method* whereby, for certain purposes, plaintiff may be allowed to acquire property and not to any specified amount or width of right of way; but if it be conceded that there is a *bona fide* controversy between these parties as to the existence of such right on the facts presented in this case, it was to my mind a most improvident order by which defendant was enjoined from any and all interference and plaintiff permitted to proceed and take over the property peaceably occupied and claimed by defendant as his home. There are many decisions with us to the effect that when the principal purpose of action is to obtain an injunction, and the facts are such as to present a serious controversy as to the rights of the parties, an injunction will be continued to the hearing. *Tise v. Whitaker,* 144 N. C., 508. But even in cases of that character, and this is not one of them, the principle only applies where the effect of the injunction is to maintain existent conditions until the right can be properly and finally determined. In the present case the defendant was in the peaceable possession of the property, and the only move that threatened a disturbance was the proposed action of the plaintiff, and yet the process of the court was issued to stay the defendant and allow plaintiff to proceed, and the affidavit of defendant filed in the case here will disclose that plaintiff was prompt to take advantage of the conditions thus created. It is as follows: "That after the order of Judge Bond grant-

ing the injunction herein, the plaintiff took possession of a part of defendant's lot and proceeded to cut through the same for the purpose of double tracking its line; that the edge of the cut at one point at the time the work was done was within 18 inches of one of the corners of defendant's house, and at another point about 30 inches from defendant's bedroom; that since the cut was made rains have washed away a part of the top of the cut and it is nearer now to defendant's said house. That the cut is almost perpendicular and in such close proximity to defendant's house that it is dangerous and defendant fears in a short time the safety of his house will be imperiled by the constant washing in of the sides of the cut; that under the order of the court it was required that the cut be sloped down and not perpendicular, and the defendant avers that plaintiff did not leave safe and sufficient support for the underpinning of his house. That the track of the plaintiff has not been completed entirely to the connection with the main line at Boylan Bridge, and the condition of the track is of such character that it can be removed elsewhere, and there is nothing of permanency about it"; and this on facts showing that defendant was in possession and on a finding by his Honor that there was a *bona fide* question of the rights of the parties. It is not required to look beyond our own decisions to show that no such order should have been made nor such untoward results permitted. In *R. R. v. Olive,* 142 N. C., 257, a contest about a right of way, it was held, among other things, *Connor, J.,* delivering the opinion: "Before a railroad company is entitled to invoke th injunctive power of the court it must show clearly: (1) that it has a right of way over the lands in controversy; (2) the extent of such right; (3) that defendants are obstructing or threaten to obstruct its use. If there is a controversy in respect to any facts necessary to be proved to entitle the plaintiff to the injunction, both parties will be restrained from trespassing or interfering until a trial can be had." And in *Cobb v. Clegg,* 137 N. C., 153, opinion by *Walker, J.,* it was said: "It is generally proper, when the parties are at issue concerning the legal or equitable right to grant an interlocutory injunction, to the right in *statu quo* until the determination of the controversy, and especially is this the rule when the principal relief sought is in itself an injunction because a dissolution of a pending interlocutory injunction or a refusal of one on application in the first instance will virtually decide the case on its merits and deprive plaintiff (here defendant) of all remedy or relief even though he should afterwards be able to show ever so good a case."

In this case, as stated, defendant, in the peaceable possession of his home, has had his case practically prejudged contrary to our decisions,

and, in my opinion, the injunctive order should be even now so modified as to restrain plaintiff from entering or trespassing on the lot occupied and claimed by defendant until the issues can be tried and the rights of the parties properly determined. It is no doubt a correct proposition that when a railroad company has constructed its road, and, in the exercise of its quasi-public franchise, is operating its trains, its work should not be lightly interfered with in furtherance of individual or private interests; but this doctrine, wholesome as it is, has no proper application here, and, on the facts of the record as I understand them, I am of opinion, as stated, that both parties should be restrained till the hearing, and if, on a full and fair investigation, it should be determined that plaintiff had a right of way, it is well and will be so adjudged; but if it shall be then established that plaintiff has wrongfully trespassed on defendant's rights of property, as he claims, it should be held to restore the lot to its former condition and make proper compensation to defendant for the injury inflicted upon him.

ALLEN, J., concurs.

CLARK, C. J., concurs with *Hoke, J.*, that the court below should have enjoined both parties, and that it was erroneous to enjoin the defendant only, which permitted the plaintiff to proceed without hindrance to the detriment of the defendant. The matter should have been in *statu quo* till the facts were determined by a jury.