ZEB SUMNER, AND H. B. MARTIN, TRADING AS SUMNER & MARTIN,
v. GRAHAM COUNTY LUMBER COMPANY.

(Filed 28 May, 1918.)

1. Contracts—Statute of Frauds—Standing Trees—Title.

A contract made with the owner of lands to cut and peel hemlock trees on his lands at a certain sum per thousand feet does not involve the title to or any interest in the standing trees, and is not one required by the statute to be in writing.

2. Same—Separate Contracts—Parol Evidence.

The defendant orally contracted with the plaintiff to cut and peel hemlock trees growing upon two separate tracts of its land, the one easily accessible and the other difficult of access. The defendant orally agreed that if the plaintiff signed a written contract as to the latter tract, he should cut the former one at the same price per thousand feet. Upon this agreement, the plaintiff signed the written contract tendered him, and it is *Held*, that evidence of the parol contract was admissible, as it was not intended to be a part of the written one, but a separate and distinct contract which the statute did not require to be in writing. The principle discussed by WALKER, J., where a contract, not required by the statute to be in writing, is partly in writing and partly in parol.

ACTION, tried before *Lane, J.,* and a jury, at Spring Term, 1918, of CHEROKEE.

The defendant lumber company had two tracks of hemlock timber to cut and peel. One was known as the Choga boundary, and consisted of some 200 acres of rough mountainous land, almost inaccessible, with scattered timber, and difficult to work over. The other was known as the Laurel Creek Boundary, a comparatively level tract, with fine timber and easy of access. Defendant offered plaintiffs $2 per thousand feet to cut the Choga boundary and peel and pile the bark on it. Plaintiffs refused, but offered to work the Choga boundary at $2, if defendant would let them work the Laurel Creek boundary at the same price. Defendant accepted the offer. The written contract, appearing in the record, dated 15 April, 1915, was prepared, but when it was tendered to plaintiffs for execution they refused to sign it because it did not embrace the Laurel Creek boundary. Defendant, by its agent, orally agreed, and as a separate contract, that if plaintiff signed the paper as to the Choga boundary, they should be given the right to work the Laurel Creek land at the same price as the Choga, and recognized the contract afterwards and affirmed it. Plaintiffs thereupon signed the contract.

Plaintiffs worked out the Choga boundary at a loss. While they were operating it, defendant's agent Day urged them to rush the work so as to get into the Laurel Creek boundary. Shortly before the Choga boundary was finished, defendant let the Laurel Creek boundary to J. L. Truett, who operated it at a profit of $350. Plaintiffs sued for

damages, alleging that the Laurel Creek boundary contained about 18,-
000,000 feet, and that they could have operated it at a profit of $1,800.
The jury found that the parol contract was made as alleged, that is as
a separate one, and assessed the damages at $350.

Judgment upon the verdict and defendant appealed.

*Alley & Leatherwood and Dillard & Hill for plaintiff.*
*M. W. Bell for defendant.*

WALKER, J., after stating the case: The first question is whether
plaintiffs could offer proof as to the parol agreement respecting the
Laurel Creek land, by which they were allowed to work that tract at the
same price fixed in the Choga land contract.

As this is a contract for peeling the timber of its bark and piling it on
the land for the use of the defendant, it is not such a one as is required to
be in writing. *Ives v. R. R.,* 142 N. C., 131. In that case the contract
was one for cutting trees and converting them into cordwood, which
was to be delivered on defendant's right of way, and we held that a writ-
ing was not required under the statute. The Court said:

"The contract of the parties to this action was not one for the sale of
standing trees, but, in the one case, for the sale and delivery of cordwood,
and, in the other, for the conversion of trees growing on the defend-
ant's land into cordwood and the delivery of the same on the defendant's
right of way. It was not contemplated by the parties that there should
be a transfer of any title to or interest in the trees as they stood upon
the land; and this is essenial to bring the agreement within the purview
of the statute," citing 29 A. & E. Enc. (2 Ed.), 880.

And the Court further said: "It was held in the case of *Smith v.
Surman,* 9 B. & C., 561, that where the owner of land agreed with an-
other to cut timber from his own land and deliver the trees, when cut
down or severed from the freehold, to the latter for a stipulated price,
the statute did not apply; and the particular agreement, in that case,
being construed to have the said effect in law, was therefore held not to
be within the statute. And the converse of the proposition is equally
true, that where one contracts with another to cut timber from his own
land and deliver it to him when cut or severed, the statute has no appli-
cation. It has been so expressly decided. *Killmore v. Howlett,* 48 N. Y.,
569; *Forbes v. Hamilton,* 2 Tyler, 356; *Scales v. Wiley,* 68 Vt., 39;
*Green v. Armstrong,* 1 Denio, 550; *Boyce v. Washburn,* 4 Hun, 792;
2 Reed on Statute of Frauds, sec. 711.

"The Courts properly said in the cases cited that to give the statute the
construction contended for would be to destroy the right of recovery of
almost every laborer at harvesting or mowing, which generally and al-

most universally rests on a parol contract, and further, that it would make a writing indispensable to the validity of a contract by the owner of a peat-bed or a sand-bank to deliver even a load from it; and, we may add, it would jeopardize the rights of every woodman who for hire fells trees in the forest."

But the defendant in this case is relying on the rule of evidence that when a contract is reduced to writing, parol evidence will not be heard to contradict, vary, or add to the same, as the parties are presumed to have expressed the entire agreement in the writing. *Moffitt v. Maness,* 102 N. C., 457; *Basnight v. Jobbing Co.,* 148 N. C., 350; *Walker v. Venters, ibid.,* 388; *Cherokee v. Meroney,* 173 N. C., 653. The rule is a wholesome one and should be carefully and strictly enforced in instances where it properly applies, but it does not exclude the evidence admitted in this case, as here the plaintiffs did not propose to show that the contract as to the Laurel Creek land had been omitted from the writing by mistake or fraud, nor that it was agreed that it should be inserted therein, but that the writing was signed by them, well knowing that it was not inserted in the paper. They proved, though, a parol contract, not required to be in writing, which, as they allege, was separate and distinct from the one stated in the writing, and intended by the parties to operate independently of it. It was not, therefore, merged in the writing, as it was not intended that it should be a par thereof, and, in any view, it does not "contradict, add to, or vary" the written agreement, but is perfectly consistent with it. The writing was merely signed and a stipulation then made that the plaintiffs should peel the bark from the hemlock trees on the Laurel Creek land at the same price and upon the same terms as in the case of the trees on the Choga land. Instead of being a part of the written agreement, it was distinctly separated from it by the parties, and was altogether an additional contract as to a different tract of land. It was clearly regarded by the parties when it was made as a contract not expressed in the written instrument, nor intended to be, and was in reality a subsequent agreement, resting wholly in parol.

The proper rule is thus stated in *Brown v. Hobbs,* 147 N. C., 73: "A written instrument, although it be a contract within the meaning of the rule on this point, does not exclude evidence tending to show the actual transaction in the following case: Where it appears that the instrument was not intended to be a complete and final statement of the whole transaction, and the object of the evidence is simply to establish a separate oral agreement in the matter, as to which the instrument is silent, and which is not contrary to its terms nor to their legal effect." The same doctrine was applied in *Manning v. Jones,* 44 N. C., 368; *Michael v. Foil,* 100 N. C., 178; *Sherrill v. Hagan,* 92 N. C., 345; *Bourne v. Sher-*

*rill,* 143 N. C., 381; *Freeman v. Bell,* 150 N. C., 146; *McKinney v. Matthews,* 166 N. C., 576.

"While parol evidence is not admissible to vary or contradict a written agreement, yet when the agreement is not one which the statute requires to be in writing, it is comptent to show by parol that only part of the agreement was in writing and what was the rest of the agreement." *Palmer v. Lowder,* 167 N. C., 333, citing numerous cases.

We have so far been treating the oral terms as those of an entirely separate and distinct contract not stated in the writing and purposely omitted therefrom, because it was such a contract, and, therefore, had no proper place in it. But there is another principle applicable, if the contract should be treated as one having separate parts in itself. There the rule laid down in *Cobb v. Clegg,* 137 N. C., 153, applies. It was there said: "When it is not intended that a written contract should state the whole agreement between the parties thereto, evidence of an independent verbal agreement is admissible." Clark on Contracts (2 Ed.), 85, thus states the principle: "Where a contract does not fall within the statute, the parties may, at their option, put their agreement in writing or may contract orally, or put some of the terms in writing and arrange others orally. In the latter case, although that which is written cannot be varied by parol evidence, yet the terms arranged orally may be proved by parol, in which case they supplement the writing, and the whole constitutes one entire contract." So, however we may consider the matter, the parol evidence rule does not apply.

Of course, the oral part of the contract must not contradict that which is written in it. *Cobb v. Clegg, supra.* It would seem that this case, in principle, if not in its facts, is exactly like that of *Manning v. Jones, supra.*

This disposes of the main question upon which the decision must turn. The other exceptions are without merit. The judge's charge stated the issues and the law with great accuracy and clearness, and it seems that the jury, upon the evidence and under the guidance of the Court as to the law, have come to the right conclusion.

No error.