E. E. MOFFITT and W. K. JACKSON, Ex'rs, v. ELIAS MANESS.

*Evidence, Oral, to vary written contract; rules of should not be refined away—Lost Negotiable Bond.*

1. There is too great a tendency in courts to relax the well settled rules of evidence excluding oral testimony offered to contradict, vary, or add to the terms, of the written contract. This Court has gone far enough in the liberal application of these rules.

2. The wise rules of evidence, which are intended for the protection of the provident, should not be refined away for the relief of the negligent.

3. Plaintiffs alleged the execution and delivery, by the defendant, to their testator, of a bond for the payment of a certain sum, and of a mortgage to secure the same. Defendant denied the execution of the bond and mortgage, but did not set up any equitable defence. On the trial defendant offered to show, by oral testimony, that it was agreed between himself and the obligee in the bond, at the time it was executed, that the bond should cover only such amount as should be found to be due from defendant to obligee upon a settlement: *Held*, that such testimony was properly ruled out.

4. When it appears on the trial that a bond sued on is lost, there being no allegation of its loss in the complaint, a judgment rendered below for the amount of the bond will be set aside in this Court, to the end that a proper indemnity may be required from plaintiff in the lower Court, if it shall be made to appear in that Court that the bond has not been destroyed, and was negotiable, and cannot be produced.

CIVIL ACTION, to foreclose a mortgage, tried before *Merrimon, J.*, and a jury, at the October Term, 1888, of MOORE Superior Court.

The plaintiffs, executors of E. N. Moffitt, alleged that the defendant executed a bond to their testator in the sum of $508.50, and a mortgage on certain lands to secure the payment of the same.

They also allege that no part of said indebtedness has been paid.

The defendant denied all of these allegations.

The plaintiffs offered in evidence the mortgage, *which recited the execution of the bond,* and stated that they did not have possession of any notes against the defendant.

The defendant then introduced Eli Howard, who testified that he was subscribing witness to the mortgage, and that he was present with E. N. Moffitt and the defendant Maness when it was executed; that they did not go into any settlement when it was executed, but that it was agreed that it should cover whatever should be found to be due upon a settlement.

The Court held this evidence incompetent. Defendant excepted.

This was all the evidence. The Court charged the jury that if they believed the evidence they must find that the defendant owed the plaintiffs the sum named in the mortgage, with interest, according to the mortgage.

The defendant excepted.

Judgment for the plaintiffs. Appeal by defendant.

*Mr. J. C. Black,* for the plaintiffs.
*Mr. John W. Hinsdale,* for the defendant.

SHEPHERD, J. (after stating the facts). Whatever effect the non-production of the bond may have upon the character of the judgment which should be rendered (and of this we will speak hereafter). there was clearly enough in evidence to warrant the charge of the Court and the verdict of the jury.

No exception was made to the admission of the mortgage alone, and no special instructions were asked in reference to the absence of the bond. So, in passing upon the exception as to the exclusion of the parol testimony offered by the defendant, we must assume that such a bond was signed, sealed and delivered by the defendant to the plaintiffs' testator.

The answer denies the execution of the bond and mortgage, and sets up no equitable defence whatever; we must, therefore, determine the question in its *legal aspects alone.*

There is, we fear, too great a tendency to relax the well settled rules of evidence against the admissibility of parol testimony, to contradict, vary or add to, the terms of a written contract, and it is thought that the courts, in their anxiety to avoid probable injustice in particular cases, are gradually construing away a principle which has always been considered one of the greatest barriers against fraud and perjury.

Even the Supreme Court of Pennsylvania, which, perhaps, has gone further than any other in this direction, sounds the alarm, and BELL, J., who delivered the opinion of the Court in *Benwick Ex'rs* v. *Benwick,* 3 Harris, 66, says: "Were the door opened still wider for the admission of all the loose dicta of the parties, running, it might be, as in this instance, through a long course of years, the flood of evil would become so great as to sweep before it every barrier of confidence and safety which human forethought, springing from experience, is so sedulous to raise against the treachery of memory and the falsehood of men. To avoid, therefore, what would really be a social calamity, it is recognized as a settled maxim that oral evidence of an agreement, entertained before its execution, shall not be heard to vary or materially affect it.  *  *  *  If any dicta or even decision in hostility to this axiom are to be found, they must be ascribed to the strong desire we are all apt to be swayed by, to defeat some strongly suspected fraud in the particular case.  But these occasional aberrations but lead to the more emphatic re-annunciation of a principle found to be essential to the maintenance of that certainty in human dealings, without which commerce must degenerate into chicanery, and trade become another name for trick."

In speaking of the higher dignity and the inviolability of written evidence, TAYLOR, J., in *Smith* v. *Williams*, 1 Mur., 426, elegantly remarks, that "the writers on the law of evidence have accordingly, in arranging the degrees of proof, placed written evidence of every kind higher in the scale of probability than unwritten, and, notwithstanding the splendid eloquence of Cicero to the contrary, in his declamation for the poet Archias, the sages of our law have said that the fallibility of human memory weakens the effect of that testimony, which the most upright mind, awfully impressed with the solemnity of an oath, may be disposed to give.

" Time wears away the distinct image and clear impression of facts, and leaves in the mind uncertain opinions, imperfect notions and vague surmises."

Impressed with the warning thus given by these able Judges, we will proceeed to an examination of the question before us.

Here is a bond, containing an *absolute* promise to pay to the obligee a certain sum of money, and without the slightest suggestion of fraud, mistake or accident, either in the pleadings or testimony, it is proposed to show that it was not an *absolute* promise to pay a *definite* sum, but that it was agreed that it should cover whatever should be found to be due upon a settlement. It cannot, it seems to me, be doubted that the proposed testimony materially contradicts and varies the terms of the writing. The most specious reasoning is incapable of reconciling them. The bond is a solemn declaration that so much is now due. The testimony offered is that the sum mentioned is *not due,* but is to be determined upon a *future settlement.* This is clearly in the " teeth " of the writing. In *Maham* v. *Sherman,* 1 Black., 380, the language of the Court is as follows : " They set up a verbal contract, made at the time the note was executed, varying the terms of the note. The note is for the payment of a certain sum, on a specified day. A

verbal contract, contemporaneous with the note, is relied on
to show that the note was not to be paid till a certain
account should be adjusted and the amount credited on the
note.    That would be making the promise conditional,
which, upon its face, is absolute."

In *Erwin* v. *Saunders,* 13 Am. Dec., 520, the defendants, the
makers of the note, "offered to prove that the note was
given conditionally, to be void if it should be shown that
Saunders, then in insolvency, had included in his inventory
the amount due Erwin—the amount of the note."    The
evidence was held to be inadmissible.

In *Dyar* v. *Walton,* S. E. Reporter, vol. 7 (which is a case
directly in point), the Supreme Court of Georgia says : " The
defence, when analyzed, resolves itself into an effort to vary
a written contract by parol, and to show the consequence of
gross negligence.    If, at the time the notes and mortgages
were given, there was an agreement entered into that they
should be varied by the result of subsequent examination,
that agreement ought to have been embodied in the written
contract, or in some other writing, whereby to establish it.
The omission to do either ·is decisive of this branch of the
defence.    There is no allegation in the plea, and no indica-
tion in the evidence, that this agreement was intended to be
embraced in any writing, or that it was left out by fraud or
mistake.    Its effect, if allowed to have any, would be to
overrule the writings executed as the result of the settle-
ment, and to re-open the settlement altogether."

These authorities, upon the pleadings in this case, fully
sustain his Honor in rejecting the testimony.    But the
defendant strenuously insists that the *entire* contract was not
reduced to writing, and that his case is governed by the
principles laid down in *Manning* v. *Jones,* Busb., 368;
*Daughtry* v. *Boothe,* 4 Jones, 87 ; *Twidy* v. *Saunderson,* 9
Ired., 5, and a long line of decisions collected in *Ray* v.
*Blackwell,* 94 N. C., 10, and ending with *Cumming* v. *Barbee,*
99 N. C., 332.

We think that a careful examination of these cases will show that, even where the contract lies partly in parol, that part which is in writing is *not to be contradicted.*

In *Manning* v. *Jones, supra,* NASH, J., said that the testimony admitted " added no new covenant to the deed made by Jones, nor did it contradict or explain any one that was contained in it." And ASHE, J., in *Sherrill* v. *Hagan,* 92 N. C., 345, speaking of Manning's case, said: " It was held that the proof was admissible, the deed being an execution of one part of the agreement, the other having been left in parol. So that the proof offered was not to add to, alter or explain the deed." So in *Cummings* v. *Barbee, supra,* the parol testimony was admitted because the writing was silent " upon the matter sought to be proved ;" and in *Ray* v. *Blackwell, supra,* the present Chief Justice said that " the cases cited do not contravene this rule, and rest upon the idea that the writing does not contain the contract, but is in part execution of it."

The case of *Kerchner* v. *McRae,* 80 N. C., 219, goes nearer the line than any other, but does not cross it. The testimony admitted was that at the time the bond was executed it was agreed that the obligees were to credit it with the proceeds of certain cotton, which had been deposited with them for sale by the testator of the obligors. Even here the *terms* of the bond, as to the amount due, were not impugned as in our case ; but an agreement was shown that the proceeds of certain cotton were to be applied as a credit.

The decision was put on three grounds : First, because the contract was partly in parol. Second, because no exception was made to the submission of an issue upon the matter sought to be proved ; and third, because the agreement, if established, constituted a " counter-claim or set-off." Conceding that the first ground was a correct one, the case is easily distinguished from ours. There it was not sought to be proven that the sum stated in the bond was not the

amount due, and the testimony offered related only to the manner of payment.   Here, the testimony, as we have said, is for the purpose of directly proving that what is asserted to be due by the bond is false, and that the true amount is to be ascertained by a future settlement.   Our decision, in applying the rule mentioned, clearly establishes, as we have said, that the terms of that part which is in writing cannot be varied by parol.

What the defendant seeks to prove is not something consistent with the terms of the bond, as in the cases cited, but is in conflict with the *very matter* which the bond itself determined.

To say that in the absence of fraud such a contradiction is to be permitted of a solemn instrument, duly *sealed* and *delivered*, is to strike a fatal blow at the sanctity given to such writings.

It will be observed that there was no condition precedent upon which the bond was to take effect.   Even where it is held that bonds may be shown by parol to be payable only upon contingencies, " it is not allowable when the terms of the bond are thereby impugned."   2 Wharton Ev., § 1067.

*Howell* v. *Hooks*, 2 Dev. Eq., 258, in addition to the cases first cited, removes our case from all doubt.   It was charged that a son procured an absolute bond from his father, and that in writing it he fraudulently left out a condition that it was to indemnify him against loss by reason of his having become bail for his brother.   There was no proof of fraud, or that the bond was written other than the parties intended, but there was evidence of the declarations of the son " that his father gave him the bond as an indemnity, and that it was to be paid if he suffered, otherwise to be destroyed."

In our case it is contended that the bond was a security for a debt, and there can be no distinction in principle between them.   RUFFIN, J., in delivering the opinion of the Court, said : " The evidence is as to the manner in which

the son should use the bond upon certain contingencies, and that drawn from his verbal declaration. To act upon it would be to insert a condition inconsistent with the legal operation, and contradicting the express terms of the instrument, which would break down all distinction as to degrees of evidence, and destroy the confidence that ought justly to be reposed in solemn contracts. * * * I believe no case can be found in which a court of equity, more than a court of law, has received parol evidence in the teeth of the contract as reduced to writing." As no fraud was proved in the case cited or the one before us, it is unnecessary to consider the effect of such a transaction, where fraud or other equitable matter is pleaded; we have therefore discussed this question, as proposed, in its legal phases alone. The principles upon which parol testimony is excluded in the case of written contracts are plain, but their application to the infinite variety of transactions daily arising is exceedingly difficult, and the books are full of conflicting decisions upon the subject. We think we have gone far enough in this State in their liberal application, and that the wise rules which are intended for the protection of the provident should not be refined away for the relief of the negligent.

For the reasons given, we think that there was no error in the ruling of the Judge who presided at the trial, and that the verdict should not be disturbed. It is doubtful, from the record, whether any exception was made to the rendition of the judgment, without accounting for the absence of the bond. It is, however, insisted upon here, and to avoid any possible injustice it is ordered that the judgment be set aside, so that, if it appears that the bond has not been destroyed, and was negotiable, and cannot be produced, a proper indemnity may be required by the Court. Daniel Neg. Instru., vol. 2, sec. 1481.

Modified and affirmed.