### FARQUHAR COMPANY v. HARDY HARDWARE COMPANY.

(Filed 24 October, 1917.)

1. **Vendor and Purchaser—Consideration of Worthless Goods—Evidence—Questions for Jury.**

   In the vendor's action to recover upon notes given for a certain machine, the purchaser may not avoid payment upon the ground that the machine was worthless and the contract failed for want of consideration, when the machines are shown to do the work when properly handled; and upon conflicting evidence, the question is one for the jury. *Hall Furniture Co. v. Cram Mfg. Co.*, 169 N. C., 41; *Bland v. Harvester Co.*, *id.*, 418, cited and distinguished.

24—174

FARQUHAR CO. *v.* HARDWARE CO.

## 2. Vendor and Purchaser—Contracts, Written—Warranty—Forms.

When the contract for the sale of certain machines. provides that the purchaser shall have one week in which to make complaints, and there is evidence tending to show that the machines were delivered to him for inspection, and that he kept them several weeks without complaint; that he had paid a part of the purchase price after delivery, and given notes, the subject of. the suit, for the balance, without effort on his part to test the machines or offer to return them, in the vendor's action to recover the purchase price the. defense that the machines were worthless is not available.

## 3. Same—Waiver.

Where the vendor of a certain machine is released from liability, under the terms of his contract, for imperfections therein, he does not waive his contractual rights by rendering gratuitous services to the purchaser in an effort to give him perfect satisfaction.

## 4. Same—Parol Evidence.

Where the terms of a contract of sale of a certain machine provides that the purchaser shall make whatever complaint he has within a week, notifying the vendor of defects which he agrees to remedy, and that it will not be taken back except in case of imperfection which it fails to correct, and that no officer or agent had the power to change this warranty, etc.: *Held,* parol evidence of promises or representations by the vendor's officers or agents tending to contradict the writing is inadmissible, and the purchaser is held to a compliance with the written terms of the contract.

## 5. Bills and Notes—Negotiable Instruments, Guarantors of Payments.

Where guarantors on a note, in consideration of receiving a certain part thereof, guarantee the payment of the note at maturity, and if it is "not paid at that time, agree to pay immediately the amount due thereon," they are guarantors, for a valuable consideration, of payment and not for collection, and are held to the express terms of their promise; and upon default of the principal it becomes their duty to immediately pay the amount then due on the note.

CIVIL ACTION, tried before *O. H. Allen, J.,* and a jury, at March Term, 1917, of HALIFAX.

Suit was brought by the plaintiff against the Hardy Hardware Company for the recovery of the amount of certain notes, described in the complaint and endorsed by the defendant, as follows:

"For value received, we hereby guarantee the payment of, and endorse this promissory note, waiving protest and notice thereof, agreeing, in case note is not paid at maturity by makers, to pay immediately the amount due thereon. Hardy Hardware Co."

These notes were given by the makers as part payment on the purchase price of certain peanut pickers sold by the plaintiff to them under a written contract, which, in each case, was separate and distinct, but identical in terms. Among the provisions contained in said contract is the following: "It is further understood and agreed that, except the

printed warranty, the foregoing lease contains the only terms, conditions and contract upon which the property described above is delivered to the lessee, and that the same cannot be varied, altered or controlled except by agreement in writing, signed by both parties hereto. This agreement is subject to the approval of the credit department of the lessors, and their printed warranty is hereby made a part of this agreement." The printed warranty is as follows: "All articles manufactured by A. B. Farquhar Company, Limited, are warranted by it to be well made and of good material, and in no instance will be taken back, except in case of imperfection which it fails to correct. A fair trial—say one week—is to be allowed after receipt of machinery, and in case of any dissatisfaction on the part of the lessee or purchaser it must be made known to it or its sales agents within that time, and opportunity be given to make it as represented. In case of failure, the machinery will be replaced, or if returned by instructions from its main office at York, Pa., payment will be refunded. Parts breaking within one year from date of shipment, because of defect, shall be replaced, on delivery of the broken parts to A. B. Farquhar Company, Limited, York, Pa. This is the extent of its liability for damage caused by breakage, etc. No officer, agent, or employee has the power to change this warranty, and it may not be changed except in writing, over the seal of the company."

The purchase price of each machine was $400. Several of the parties, G. K. Moore, L. H. Kitchen, Balfour Dunn, J. T. Riddick, and J. A. Kitchen, who signed the notes, made cash payments, at different times, after trying out the machines and without having made any complaint as to their condition. The appellant contends that the machines never picked a peanut, were of no commercial value, completely worthless, and merely of an experimental character. H. P. Goodling, the sales manager, testified that the machines had been on the market four or five years, but that the 1913 machine was an improved model, which was tested very successfully, and placed on the market in 1913. There seems to be no evidence that a machine of the same type in any other community had failed to give satisfaction. J. A. Kitchen testified: "While going, it was the best machine I ever saw." And again: "I threshed part of my peanuts with it, and the other part with the Champion thresher." L. H. Kitchen stated that he picked about 275 bags of peanuts about the first or middle of November, 1913, and did not sign the notes until December of that year. "I still believe that my brother's opinion is correct, and that with certain changes the machine would be all right." Herbert Johnson testified: "I tried one of the machines during the 1914 season, which was more than a year after it was bought, and it picked some peanuts." Balfour Dunn stated: "It did as pretty work as any machine I ever saw for the time being, just as long as it ran.

I got it in 1913 and used it in 1913 and 1914, and gave it up in 1915. I got off to the number of 306 bags in 1913, which was all my crop." D. K. Moore testified: "I picked 400 or 500 bags for myself."

*Langston, Allen & Taylor and E. L. Travis for plaintiff.*
*Stuart Smith, R. C. Dunn, and W. E. Daniel for defendant.*

WALKER, J., after stating the case: There is evidence to show that the machines were, if properly handled, fit for the purpose for which they were intended—that is, to pick peanuts. It would appear, upon the defendant's own showing, that there was not a failure of consideration, and that the court was correct in submitting the case to the jury upon the evidence. There also was a separate consideration between the guarantor and the plaintiff, in that the guarantor received 25 per cent of the cash payment and was to receive 25 per cent of the notes in consideration of his handling the machines and guaranteeing the notes.

The appellant relies on the cases of *Hall Furniture Co. v. Crane Mfg. Co.,* 169 N. C., 41, and *Bland v. Harvester Co.,* 169 N. C., 418. Upon analysis of these cases, however, it will be seen that not only do they sustain the position of the plaintiff in regard to these exceptions, but also with respect to practically all of the other exceptions involved. The case of *Furniture Co. v. Mfg. Co., supra,* deals with an entirely different state of facts. There the plaintiff had purchased a second-hand hearse *without seeing it.* When it came, as the evidence disclosed, the hearse was of no value and worthless; there were no proper wheels, as those sent with it were not of sufficient strength to hold it up; the top was worn out and rotten, and a part of the woodwork was decayed and in bad condition. The plaintiff refused to accept it, and brought suit to recover the purchase price, which was paid in advance, relying on *S. F. Medicine. Co. v. Davenport,* 163 N. C., 294. Clearly, therefore, under the principle that the seller shall at least furnish merchantable and salable goods, the plaintiff was entitled to recover fully. Here, however, the defendant took the peanut pickers from the depot and delivered them to the purchasers. They were inspected before any note was signed, and were kept in their possession for several weeks without any effort on their part or an offer to return them to the seller. The contract provided that they should have one week to make complaints, and notwithstanding this fact they had kept them in their possession for some time, paid a part of the purchase price, and signed notes for the difference. If the pickers did not come up to the warranty in the printed contract, it was the duty of the plaintiff to return them, or offer to return them, to the defendant within a reasonable time. *Parker v. Fenwick,* 138 N. C., 209; *Mfg. Co. v. Lumber Co.,* 159 N. C., 508.

In an action for breach of warranty, as to the kind and quality of goods which are sold, there is an implied undertaking that the goods shall be of some value and reasonably suited to the uses for which the seller knew they were bought, but here it appears that the purchaser actually used them for the purposes for which he purchased them. *Bland v. Harvester Co.,* 169 N. C., 418, where the Court discusses the principle established in *Furniture Co. v. Mfg. Co., supra,* and distinguishes it from the principle applied in the *Bland case,* which is the one involved in our case. The plaintiff did not waive its contractual rights by rendering services to the purchasers gratuitously during the season in the effort to give them perfect satisfaction. It was said in *Piano Co. v. Kennedy,* 152 N. C., 196: "We have recognized the principle that there can be no implied warranty of quality in the sale of personal property where there is an express warranty, and that where a party sets up and relies upon a written warranty he is bound by its terms and must comply with them (30 A. and E., p. 199; *Main v. Griffin,* 141 N. C., 43), and the further principle applied by us in that case, that a failure by the purchaser to comply with the conditions of the warranty is fatal to a recovery for breach of the warranty in an action on it, or where, as in this case, damages for the breach are pleaded as a counter-claim in an action by the seller for the purchase money." The Court stated, in *Guano Co. v. Live Stock Co.,* 168 N. C., 447: "A party who relies upon a written contract of warranty as to quality or description of the property he has purchased is bound by the terms of the warranty. *Machine Co. v. McKay,* 161 N. C., 586. He is not only held to the terms of the contract into which he has deliberately entered, but he is not permitted to contradict or vary its terms by parol evidence, as 'the written word must abide' and be considered as the only standard by which to measure the obligations of the respective parties to the agreement, in the absence of fraud or mistake, or other equitable element. 35 Cyc., 379. There are numerous cases decided by this Court illustrative of this elementary rule in the law as to written contracts. *Moffitt v. Maness,* 102 N. C., 457; *Cobb v. Clegg,* 137 N. C., 153; *Basnight v. Jobbing Co.,* 148 N. C., 356; *Walker v. Venters,* 148 N. C., 389; *Medicine Co. v. Mizzell, ib.,* 384; *Walker v. Cooper,* 150 N. C., 128; *Woodson v. Beck,* 151 N. C., 144; *Machinery Co. v. McClamrock,* 152 N. C., 405; and especially *Fertilizer Works v. McLawhorn,* 158 N. C., 275." See, also, *Bland v. Harvester Co., supra.* There was no evidence of authority upon the part of the agent to waive any provision of the contract and to make an oral agreement. If, therefore, there was any defect or other ground of complaint, or if the machines had been worthless or without value, the duty of the purchaser was clearly defined in the contract, and having failed to comply with the terms therein stated, he must take the

consequences or be held to the terms of his written agreement. *Piano Co. v. Strickland,* 163 N. C., 251. Otherwise, written contracts would be of little or no value or efficiency if they can so easily be destroyed by oral evidence.

It is said by the Court, in *Piano Mfg. Co. v. Root,* 54 N. W., 924, when speaking of a contract in practically identical terms as this one, that the warranty could not be added to or changed by proof on the part of the purchaser after he signed and delivered the order, of a contemporaneous oral agreement, that if the machine ordered did not do good work the buyer need not keep it, or that he was informed by the agent of the seller that he would not be bound by the terms of the written order. The Court, in *Buffalo Pitts Co. v. Shriner,* 41 Wash., 146, held incompetent "oral representations of the agent of the seller made beforehand as to the character, material and quality of the machinery, which induced the buyer to sign the order, and subsequently to execute the notes and mortgage which it was sought to foreclose in payment of the machinery purchased." The rule is also stated in *McGraw v. Fletcher,* 35 Mich., 104, to the effect that if there is an express warranty as to the working qualities of machinery, this excludes any implied warranty as to its fitness. There were several attempts made to introduce testimony for the purpose of contradicting or varying the written terms of the contract, but such efforts must prove unavailing and result in complete failure. The rule has been well established for many years, and is such a wholesome one, being founded on the greatest wisdom, that we must not relax it in the slightest degree. We have been too often warned against the slightest departure from this principle to venture now upon any course of decision which would impair its value or diminish its force. We have very recently adverted to this rule and the importance of safeguarding it against anything which might weaken its foundation, in *Potato Co. v. Jenette,* 172 N. C., 1, at p. 3, where we said: "The parties had the legal right to make their own contract, and if it is clearly expressed it must be enforced as it is written. We have no power to alter the agreement, but are bound to interpret it according to its plain language. There is no rule of evidence better settled than that prior negotiations and treaties are merged in the written contract of the parties, and the law excludes parol testimony offered to contradict, vary, or add to its terms as expressed in the writing. *Moffilt v. Maness,* 102 N. C., 457. The principle lies at the very foundation of all contracts, and if permitted to be violated the ultimate injury to the commercial world and to society generally would be incalculable and certainly farreaching. It is unfortunate that loose *dicta* in occasional and illconsidered cases are to be found which seem to be hostile to this safe and sound axiom of the law; because they have strained the law in order to

defeat or circumvent some suspected fraud, perhaps gross and vicious; but the method of preventing the consummation of the wrong will be far more disastrous in its results than a steady adherence to the rules of the law, although in special cases actual imposition or fraud may be perpetrated. The rules of law are and must needs be universal in their application, this being essential to certainty in business transactions and to the integrity of contracts; for otherwise "commerce may degenerate into chicanery and trade become another name for trick." *Benwick v. Benwick,* 3 Harris, 66. It was there further stated that the plausible argument of Cicero in opposition to the usual rule preferring the written to the oral proof has been consistently repudiated by the courts from his day to the present time. The written word is more enduring, and not exposed to the corrupting influences to which oral proof is subjected—not to say anything concerning the frailty of human memory, which greatly impairs its reliability. This case is much like *Medicine Co. v. Mizell,* 148 N. C., 384, where it was attempted to show the conduct and oral declarations of an agent in contradiction of the writing. The Court said: "It is positively stated in the order, as we have said, that there is no agreement, verbal or otherwise, affecting the terms of the order, except the one expressed therein, and to this the defendant freely assented by signing the written instrument. The well-settled rule of the law forbids him now to show the contrary by oral testimony. It was, therefore, improper to admit the evidence to show that the goods were to be returned, at his option, if not sold within ninety days, as this clearly contradicts the express terms of the contract," citing *Moffitt v. Maness,* 102 N. C., 457.

The buyers in this case did not comply with the terms of the contract of warranty, by which they were strictly bound, and cannot rely upon the oral statements, even in the form of promises which are alleged to have been made by some officer or agent of the plaintiff, as a waiver of its stipulations, because it is expressly agreed in the warranty that no such oral statement shall be binding upon the seller. There is nothing that amounts to an estoppel or waiver, but on the contrary all of the evidence proposed to be introduced by the defendant, if admitted, would violate the well-settled rule of law, and lead in the end to disastrous results. When a party makes a contract and reduces it to writing, he must abide by its terms as he has plainly stated them. This case is governed by *Allen v. Tompkins,* 136 N. C., 208; *Frick v. Boles,* 168 N. C., 654, and that line of cases, several of which are cited in *Frick v. Boles, supra.* The defendant should have complied with the plainly expressed terms of the contract and pursued the course therein indicated, as they had solemnly agreed to do. We cannot help them when they fail to help themselves, for the law lends its aid to the vigilant and denies it to those

who sleep upon their rights. Parties should assert their rights in due season and according to their own stipulations, where they claim under a contract. The contract provided a method of relief in case of any defect in the machines, which, so far as appears, was reasonable and lawful, and there was a further stipulation inserted in the writing that "the same cannot be varied, altered, or controlled except by agreement in writing, signed by both parties hereto," and that the writing "contains the only terms, conditions and contracts upon which the property described above is delivered to the lessee." We would greatly impair the obligation of contracts and public confidence in their integrity should we allow one party to depart from his agreement and hold the other to a strict compliance with its terms. This idea is thus well expressed in *Meekins v. Newbury,* 101 N. C., 18, and from it and other cases we thus formulate the rule: When parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the subject or extent of their engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time when it was completed, or afterwards, is rejected, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice possibly of one of the parties. *Sparks v. Messick,* 65 N. C., 440; *Guano Co. v. Live Stock Co., supra; Parker v. Fenwick,* 138 N. C., 209; *Robinson v. Huffstetler,* 165 N. C., 459; 17 Cyc., 597, 598. "The rule, however, goes even further than this, and it has been established that where the instrument is free from ambiguity and is in itself susceptible of a clear and sensible construction, parol or extrinsic evidence is not admissible even to explain its meaning or determine the construction of the writing." 17 Cyc., 598. If we should decide otherwise in this case and hold the evidence to be competent, it would be making a contract for the parties which they did not make for themselves.

The guaranty of the defendant, Hardy Hardware Company, is an absolute one—a guaranty of payment, and not merely of collection. They, for a valuable consideration, guarantee the payment of the notes at their maturity, and if they are not paid at that time they "agree to pay immediately the amount due thereon." Joyce on Suretyship (2d Ed.), 348. "Such a guaranty is an absolute promise that the principal will perform, in accordance with the provisions of his contract. It is an absolute promise that a particular thing shall be done, and the guarantor thereby assumes an active, absolute duty to see that it is done, and must, at his peril, perform the promise." The undertaking, or obligation, is unconditional, and in default of the principal it becomes the

duty of the guarantor to immediately pay the amount due thereon. *Cowan v. Roberts,* 134 N. C., 415; *Nudge v. Varner,* 146 N. C., 147; *Bank v. Moore,* 138 N. C., 529.

The whole case resolves itself into the question whether, when parties not only fully agree upon their contract, but reduce it to writing, so as to fix its terms by language of their own, deliberately chosen to clearly state its terms, they can afterwards by oral evidence prove a different one, especially when one of the stipulations of the contract positively excludes any and all such evidence, and making the writing the only and exclusive expression of the agreement. There is but one answer to such a question, that the Court will not permit the contract to be modified or annulled in any such way. It would be unsafe to do so, as it would destroy confidence in the integrity of contracts, and, besides, would allow one of the parties to do what he had promised should not be done. It would be unjust to interfere with contractual rights in this way. Parties must be held to the performance of their agreements as made by them.

It results that the rulings of the court were correct.

No error.