## J. R. CAFFEY v. OAK FURNITURE COMPANY.

(Filed 17 April, 1918.)

1. **Contracts, Written — Compensation—Commission—Traveling Salesman—Territory—Mail Orders—Subagents.**

    Defendant contracted in writing with the plaintiff that the latter closely cover a defined territory for the sale of products manufactured by the former; send in a list of the "customers" visited as well as sold, for which he was to receive a certain per cent commission on "all orders received, accepted and shipped by us": *Held*, the writing contemplated the payment of the specified commission on all orders "received, accepted and shipped" by the plaintiff within the territory during the life of the contract, and did not confine them to the orders that the plaintiff had taken in person.

2. **Appeal and Error—Contracts, Written—Evidence—Legal Construction.**

    The admission of parol evidence to explain a written contract of employment for the sale of merchandise upon a commission basis of compensation is not reversible error when it tends to sustain the interpretation correctly placed on the written instrument in the Superior Court as a matter of law.

CIVIL ACTION, tried before *Harding, J.,* and a jury at November Term, 1917, of GUILFORD.

The action was brought to recover damages for a breach of the following contract:

"This contract made and entered into this the 15th day of March, 1916, by and between J. R. Caffey, of Greensboro, N. C., and the Oak Furniture Company, of North Wilkesboro, N. C.:

"Witnesseth, That J. R. Caffey agrees to travel and sell the line of furniture manufactured by the Oak Furniture Company in North Carolina and South Carolina from now until 1 June, 1916. The Oak Furniture Company agrees to pay his traveling expenses not to exceed $100 per month and also 4 per cent on all orders received, accepted and shipped by us during this period of time. The said J. R. Caffey agrees further to travel and work the territory above mentioned closely from 1 June, 1916, to 1 January, 1917, on a commission basis of 10 per cent on all orders received, accepted and shipped by us. The said J. R. Caffey agrees to furnish us a list of his expenses from this date to 1 June, 1916, and also a list of customers called on. This report to be furnished weekly, and after 1st June, when he travels on his own expenses on a commission basis, he is not to furnish a list of expenses, but is to furnish a list of customers called on, together with the ones sold.

"This contract signed by J. R. Caffey and J. H. Johnson for the Oak Furniture Company, each retaining a copy." (Signature of parties here.)

CAFFEY *v.* FURNITURE CO.

Plaintiff canvassed the two States under this contract and received commissions on all orders which he, the plaintiff, personally secured, and defendant also paid him for the orders which were taken by his sub-agents, but refused to allow the plaintiff commissions on orders which were sent in to the defendant by customers doing business within plaintiff's territory by mail; that is to say, refused to allow plaintiff any commissions on what is known as "mail orders." The defendant also refused to allow plaintiff commissions on goods which were sold within his territory by other agents whom defendant put into the territory without his consent.

The case states that the judge intimated at the close of the testimony he would charge the jury that under the contract plaintiff would be entitled to recover 10 per cent on all orders in the territory named which were received, accepted and shipped by the defendant during the life of the contract. Defendant excepted. The charge was not sent up with the record. We only have the evidence, verdict of the jury, and judgment of the court. The jury returned the following verdict:

1. What is the amount in dollars and cents of the orders sent in by R. B. Strickland to the defendant and accepted by the defendant from 1 June, 1916, to 1 January, 1917, and actually shipped out by the defendant? Answer: "$6,257.53" (by consent).

2. What is the amount of all other orders received and accepted by defendant from customers from North Carolina and South Carolina from 1 June, 1916, to 1 January, 1917, and actually shipped out by the defendant? Answer: "$8,660.96" (by consent).

Judgment was entered in favor of the plaintiff for $1,116.39, and defendant appealed.

*S. B. Adams and Brooks, Sapp & Kelly for plaintiff.*
*Justice & Broadhurst and O. C. Cox for defendant.*

WALKER, J., after stating the case: We are of opinion that the presiding judge placed the right construction on the contract, and that, if it can be explained, there is evidence, both oral and documentary, which tends strongly to sustain the ruling. It will be observed that the contract is very broad in its language, as it says that plaintiff shall receive "10 per cent as commissions on all orders received, accepted and shipped by us." He had been assigned certain territory which was to be his, and canvassed or "drummed" by him, and the clause above quoted could mean only that the commissions would be paid "on all orders received and accepted" from that territory and shipped by defendant. It does not say that the commissions will be paid only on orders received from Caffey personally, or returned by him, but on all orders received; and

this means from the territory, whether sent in by him or not. And there was a reason for this, as shown by the contract, for he was to send in a statement not only of customers who bought goods on orders, but "a list of customers called on" by him, whether or not they bought goods. The defendant will hardly contend that they intended to avail themselves of these services so as to get a list of persons "called on" without paying for them. It was contemplated that plaintiff should make a general "and close" canvass of the territory, "travel and work the same," and introduce the goods to the trade, selling such as he could, and get his commissions on all orders received from that territory which were accepted and shipped by defendant.

The case of Strickland was excepted by the court from the instruction because plaintiff admitted that he had agreed that if Strickland would not cover his route he would allow him 6 per cent out of his commission, Strickland to give plaintiff "his routing," so that they would not conflict. Under a contract similar to this one, the Court of Appeals of New York, in *Taylor v. Enoch Morgan's Sons Co.*, 124 N. Y., 184, allowed commissions according to the rule herein stated by the judge. It appeared in that case that the defendant company entered into a written contract with the plaintiff, by which the latter agreed to travel over a certain route, which was termed in the contract "his route," at least six times a year, representing and selling defendant's goods and selling no other goods to conflict with them. Defendant agreed to pay him for his services a commission on all orders accepted from bona fide purchasers, the commission on new trade to be double that allowed on the regular trade. Plaintiff entered upon his duties under the agreement and continued to discharge them until the agreement was terminated. In an action to recover commissions unpaid, it appeared that some of the orders accepted by the defendant came directly to it from the persons making them and some were taken by other employees of the company, also that orders were received from responsible parties which were not accepted by defendant. The referee allowed plaintiff commissions on all accepted orders made by parties on the line of his route, with certain exceptions specified in the contract, and also upon such unaccepted orders. *Held,* no error that the commissions were not limited to orders obtained and received by plaintiff, and that defendant had no right arbitrarily and without cause to reject orders from bona fide purchasers.

It will be noted that in the *Taylor case* the contention on the part of the defendant was, as it is here, that the traveling salesman was entitled only to commissions on orders taken by him and forwarded to the company, who was the defendant. This view of the contract was rejected by that Court, and in the course of the opinion it was said by *Justice Haight:* "On the part of the defendant, it was claimed that he was only

entitled to commissions on orders taken by him and forwarded to the company. It will be observed that under the provisions of the contract the plaintiff was required to travel over his route in the three States named at least six times per year and represent and sell the defendant's goods, he paying his own expenses. His entire reward for the services rendered was in the commissions which the defendant agreed to pay him. He had for many years been engaged in a similar business for Colgate & Co., had a line of acquaintances and customers, and it became his duty to use his best endeavors to extend the defendant's trade, introducing its soaps, sapolio, and other goods to the dealers with whom he should be acquainted. He was to be paid commission 'upon *all* orders accepted by from bona fide purchasers.' This language is broad and sufficient to support the contention of the respondent. Had it been the intention of the defendant to limit his commissions to orders obtained and received from him, apt words clearly expressing that intent would doubtless have been used."

The Court further said of the features common to the two cases: "The plaintiff could hardly be expected to drum up customers at his own expense without receiving any benefit from sales made to such. The wording of the contract is such as to lead us to conclude that the interpretation adopted by the referee expressed the intention of the parties, and that the same should be approved. We do not understand the provisions of the contract to be so ambiguous as to make oral testimony necessary in order to explain its meaning, and we quite agree with the general term that all of the evidence taken upon this branch of the case might have been properly excluded; but we do not see how harm has resulted to the defendant, for without the evidence we should be compelled to reach the same conclusion in reference to the meaning of the contract."

The last expression referred to evidence introduced by both parties to explain the meaning of the contract. The two cases are almost literally alike, and are certainly so substantially and for all practical purposes. In that case, as in this, there had been a previous contract and settlement under it, as will appear from this language: "After serving the defendant nine months under this agreement a controversy arose and the employment thereunder was terminated. A settlement, however, was agreed upon and the contract under consideration executed. It is in the form of a letter addressed to the plaintiff by the secretary of the defendant, with the acceptance of the plaintiff written thereunder." The clause fixing the amount of the commission was as follows: "We agree to pay you a commission upon all orders accepted from bona fide purchasers."

If anything, the language of our contract is stronger in favor of plaintiff's contention in this case than is that just quoted, and which was held by the Court as fully sufficient to sustain the contention of the plaintiff

in that case that he was entitled to receive commissions on all goods sold in the territory to bona fide purchasers; and whether the purchases were made in good faith is not involved in this case.

If we are at liberty to analyze and apply the oral and documentary evidence, we are of the opinion that a fair and reasonable construction of it would sustain the plaintiff's contention, especially the documentary proof. The plaintiff testifies directly and positively that the company agreed with him, through Mr. Johnson, that he should have the exclusive right to the territory and appoint subagents, they to receive 6 per cent and he 4 per cent of the commissions, and further, that he should have commissions on all mail orders.

"By the general rule of the common law, if there be a contract which has been reduced into writing, verbal evidence is not allowed to be given of what passed between the parties, either before the written instrument was made or during the time it was in a state of preparation, so as to add to or subtract from or in any manner to vary or qualify the written contract. A court of equity, however, admits such evidence, whether the purpose of the suit be to rectify or rescind an agreement." Kerr on F. & M., pp. 412 and 413; *Potato Co. v. Jeanette,* 174 N. C., 242. It is also true that parol evidence is not admissible to contradict, vary or change a written contract. *Moffitt v. Maness,* 102 N. C., 457; *Farguhar Co. v. Hardware Co.,* 174 N. C., 369, and cases cited.

We need not, therefore, consider the oral testimony, which was properly disregarded by the court.

No error.