The defendant, Blades Motor Company, is a dealer in automobiles in New Bern, North Carolina.
It was alleged that said Blades Motor Company was a sales agent of its codefendant, Plymouth Motor Corporation, and as such sales agent was authorized to represent and warrant automobiles sold by said agent for and in behalf of its principal. The Blades Motor Company filed an answer admitting that Plymouth automobiles were advertised by it as "being cars of good quality, material and workmanship, properly constructed to stand the wear and tear incident to the use for which manufactured," but denied that it ever made representations or warranties of automobiles other than the standard form of written guaranty made by the manufacturer thereof.
The Plymouth Corporation filed an answer setting up a written warranty and averring that if its codefendant, Blades Motor Company, sold the said automobile with any warranty that it did so without any authority from said defendant, "and that this defendant's sole liability on said standard form of warranty is to the party contracting with it, to wit, its codefendant, Blades Motor Company."
The plaintiff testified that in March, 1929, he bought a Plymouth automobile from the defendant, Blades Motor Company, through Mr. Roberts, the manager thereof. Plaintiff said: "I bought it with Mr. Dan Roberts' recommendation. I didn't have any other warranty, guarantee, and had not seen any, and didn't know of any other, only I had seen the car advertised in the Ladies Home Journal, or some journal that carried a sheet advertisement. . . . I asked Mr. Roberts if this car was all right and he said, `Yes, absolutely,' and I asked him how much mileage it would give, and he said about twenty or twenty-two miles, depending on how I drove it, and I asked him about the speed, and he said, `Why, sixty-three miles,' and I asked him if it rode good and he said, `Yes,' and went on to say it was the best car the Chrysler people had put out, and that it was Mr. Chrysler's special favorite, that it was his special make, and would guarantee it to give me satisfaction and that it would suit me." *Page 353 
In a short time, according to plaintiff's testimony, the car began "to shimmy," and "almost shook the wheel out of my hand," and I had to stop and start all over again. That happened a great many times, and I came back and complained to Mr. Roberts, and he said it could be remedied."
After making repeated complaints the plaintiff testified that Mr. Roberts told him they would have a factory man there in a few days to examine the car, and that in a few days the factory man did come and drove the car and sent it to the Blades Motor Company Garage to be worked on. Subsequently the car was taken to the Chrysler Garage, and plaintiff was told by Mr. Dixon, the mechanic there, that the car could not be fixed. The plaintiff kept the car from March, 1929, until June, 1931, when he traded it to a Ford dealer in Red Springs, receiving $100 in a trade. The original cost of the car was $825.
The agreement between the Plymouth Motor Corporation and the Blades Motor Company was offered in evidence, but was excluded by the trial judge. This agreement provides among other things:
1. That the Plymouth Corporation "grants unto the dealer the nonexclusive right to sell Plymouth motor vehicles in the vicinity of his place of business at New Bern, Craven County, North Carolina.
2. The company agrees to sell and deliver to the dealer at the company's factory, Detroit, Michigan, and the dealer agrees to purchase from the company and accept delivery of, as and when tendered by the company, the products described in the schedule of purchases.
3. The dealer agrees to pay the company for the products above referred to in lawful money of the United States of America, its regular current list prices f.o.b. its loading docks at Detroit. . . . Payment shall be made in cash in advance or sight draft against bill of lading, etc.
4. Plymouth Motor Vehicles are sold upon the standard warranty of the National Automobile Chamber of Commerce, which is as follows: "We warrant each new motor vehicle manufactured by us, whether passenger car or commercial vehicle, to be free from defects in material or workmanship under normal use and service, our obligation under this warranty being limited to making good at our factory any parts or part thereof which shall within ninety (90) days after delivery of such vehicle to the original purchaser, be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, express or implied, and of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our vehicles." *Page 354 
"This warranty will not apply to any vehicle which shall have been repaired or altered outside of our factory in any way so as, in our judgment, to affect its stability or reliability, nor which has been subject to misuse, negligence or accident, nor to any commercial vehicle made by us which shall have been operated at a speed exceeding the factory rated speed, or loaded beyond the factory rated load capacity."
"It is understood and agreed that in order to be entitled to credit for parts returned, the parts must be returned charges prepaid within the period of the warranty to the factory of the company, properly tagged, giving the serial and motor numbers of the vehicle from which the part was taken, the name and address of the owner, the date of sale, and the number and date of invoice of the part used to make replacement. All parts returned must be accompanied by a notice of disposition in case claim for defense is not allowed. In the absence of such notice the company may dispose of such parts and not be liable to the dealer or any other person therefor."
5. It is hereby expressly agreed and understood by and between the parties hereto that the dealer is in no way the representative or agent for the company, and has no right or authority from it to assume or create any obligations of any kind, express or implied, on its behalf, or to bind it in any respect whatsoever."
The following issues were submitted to the jury:
1. "Did the defendant, Blades Motor Company, represent and warrant the automobile as alleged in the complaint?"
2. "If so, was said warranty broken by a breach of said warranty?"
3. "What damages, if any, is plaintiff entitled to recover of the Blades Motor Company?"
4. "Did the defendant, Plymouth Motor Corporation, represent and warrant the automobile, as alleged in the complaint?"
5. "If so, was there a breach of said warranty?"
6. "What damages is plaintiff entitled to recover of Plymouth Motor Corporation?"
The jury answered the first issue "No," the second issue "No," the third issue "None," the fourth issue "Yes," and the sixth issue "$100."
Thereupon judgment was entered upon the verdict against Plymouth Motor Corporation and it appealed.
The dealer's agreement between the Blades Motor Company, the alleged agent, and the Plymouth Motor Corporation, the alleged principal, was competent and admissible in evidence, and consequently *Page 355 
the ruling of the trial judge excluding this contract constitutes reversible error. The execution of the contract was proven by Mr. Roberts, manager of defendant, Blades Motor Company. It was alleged in the complaint that the Blades Motor Company was the agent of the Plymouth Motor Corporation. Hence upon denial of agency the contract between the parties immediately became material. Indeed, the case of Ford v. Willys-Overland,197 N.C. 147, 147 S.E. 822, is practically identical with the case at bar and is determinative of the merits of the present controversy.
While the written contract is not conclusive upon the question of agency between the Blades Company and the Plymouth Company, there was no other evidence of agency or course of dealing between the parties, and the written contract expressly negatived the relationship of principal and agent.
However, the plaintiff contends that the fact that the Plymouth Corporation sent a man from the factory to examine the car and to attempt to repair it or put it in good order, constituted a ratification of the representations and warranties made by the seller, Blades Motor Company. This contention, however, cannot be sustained. Farquhar v. Hardware Co.,174 N.C. 369, 93 S.E. 922. In the Farquhar case, supra, the Court said: "The plaintiff did not waive its contractual rights by rendering services to the purchasers gratuitously during the season in the effort to give them perfect satisfaction." As there was no evidence of agency expressly created or resulting from a course of dealing or otherwise between the Plymouth Motor Corporation and the Blades Motor Company, the motion for nonsuit made in apt time by the Plymouth Company should have been allowed.
Error.
Reversed.